No. 26-2024

# United States Court of Appeals for the Ninth Circuit

---

ARIZONA ALLIANCE FOR COMMUNITY HEALTH CENTERS; CANYONLANDS HEALTHCARE; CHIRICAHUA COMMUNITY HEALTH CENTERS; DESERT SENITA COMMUNITY HEALTH CENTER; MARIPOSA COMMUNITY HEALTH CENTER; MARANA HEALTH CENTER; MOUNTAIN PARK HEALTH CENTER; NATIVE HEALTH; NORTH COUNTRY HEALTHCARE; SUN LIFE FAMILY HEALTH CENTER; SUNSET COMMUNITY HEALTH CENTER; UNITED COMMUNITY HEALTH CENTER - MARIA AUXILIADORA, INC.,

*Plaintiffs-Appellees,*

– v. –

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM; ROBERTA HARRISON, replacing Carmen Denise Heredia pursuant to FRAP 43(c)(2),

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA IN NO. 4:19-CV-00517-JGZ, HONORABLE JENNIFER G. ZIPPS, CHIEF DISTRICT JUDGE

## APPELLANTS' MOTION TO STAY DISTRICT COURT ORDER AND JUDGMENT PENDING APPEAL

CAROLINE M. BROWN
KENDRA DOTY
BROWN & PEISCH PLLC
*Attorneys for Defendants-Appellants*
1220 19th Street, NW, Suite 210
Washington, DC 20036
(202) 499-4258

CP COUNSEL PRESS    (800) 4-APPEAL • (394123)

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................2

    I.    Arizona's Medicaid Program ..................................................................2

    II.   Procedural History .................................................................................4

ARGUMENT ...................................................................................................7

    I.    AHCCCS Has Demonstrated a Likelihood of Success on the Merits ............8

    II.   AHCCCS Will Be Irreparably Harmed Absent a Stay .................................15

    III.  A Stay Will Not Injure Plaintiffs. ..........................................................17

    IV.  The Public Interest Strongly Favors a Stay to Avoid Destabilizing Arizona's Medicaid Provider Network. ......................................................18

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Crouch*,
  169 F.4th 474 (4th Cir. 2026) ................................................................ 12

*Arizona Alliance for Community Health Centers v. Arizona Health Care
  Cost Containment System,*
  47 F.4th 992 (9th Cir. 2022) ........................................................... 4, 5, 14

*Blessing v. Freestone,*
  520 U.S. 329 (1997) .............................................................................. 9

*California Association of Rural Health Clinics v. Douglas*,
  738 F.3d 1007 (9th Cir. 2013) ............................................ 4, 5, 13, 14, 18

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ............................................................................... 5

*Concourse Rehabilitation & Nursing Center, Inc. v. DeBuono*,
  179 F.3d 38 (2d Cir. 1999) .................................................................... 14

*Croffe v. Roberts*,
  No. 1:25-cv-02036, 2026 U.S. Dist. LEXIS 85228
  (E.D. Va. Apr. 15, 2026) (unpublished) ................................................. 12

*Family Health Centers of Southwest Florida, Inc. v. Secretary,
  Florida Agency for Health Care Administration*,
  No. 2:21-cv-278, 2023 U.S. Dist. LEXIS 139844
  (M.D. Fla. Aug. 10, 2023) (unpublished) ............................................... 15

*Gonzaga University v. Doe,*
  536 U.S. 273 (2002) ............................................................................... 9

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................... 8

*Kansas Health Policy Authority v. U.S. Department of Health &
  Human Services*,
  798 F. Supp. 2d 162 (D.D.C. 2011) ....................................................... 14

*Keira M. v. Quin*,
  No. 3:25-cv-00566, 2026 U.S. Dist. LEXIS 75469
  (M.D. Tenn. Apr. 7, 2026) (unpublished) ............................................... 12

*Lair v. Bullock,*
    697 F.3d 1200 (9th Cir. 2012) ...................................................................... 15

*Lancaster v. Cartmell,*
    162 F.4th 1063 (10th Cir. 2025) .................................................................. 12

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) ..................................................................... 2, 8

*Medina v. Planned Parenthood South Atlantic,*
    606 U.S. 357 (2025).................................................................... 9, 10, 11, 13

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) .......................................................................... 9

*Missouri Department of Social Services,*
    DAB Decision No. 1412 (1993), 1993 HHSDAB LEXIS 1160,
    1993 WL 742589 (H.H.S.)............................................................................ 14

*Planned Parenthood Arizona Inc. v. Betlach,*
    727 F.3d 960 (9th Cir. 2013) .................................................................. 10, 11

*Planned Parenthood South Atlantic v. Kerr,*
    95 F.4th 152 (4th Cir. 2024) ....................................................................... 10

**Statutes**

42 U.S.C. § 1396a ................................................................. 3, 4, 8, 11, 12, 13, 14

42 U.S.C. § 1396b.......................................................................................... 3

42 U.S.C. § 1396c.......................................................................................... 13

42 U.S.C. § 1396d......................................................................................... 11, 12, 14

42 U.S.C. § 1983............................................................................................ 5, 8

**Rules**

Federal Rule of Appellate Procedure 8 ............................................................... 1

**Regulations**

42 C.F.R. § 430.20 .......................................................................................... 6

42 C.F.R. § 438.4 ........................................................................................... 3

42 C.F.R. § 438.5 ........................................................................................... 3

42 C.F.R. § 438.7 ........................................................................................... 3

42 C.F.R. § 438.806 ....................................................................................... 3

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 8, the Arizona Health Care Cost Containment System (AHCCCS), which is the State of Arizona's Medicaid program, and its Director, who are the Defendants-Appellants (hereafter, "Defendants") in this action, hereby move for a stay of the district court's March 12, 2026 order and judgment pending resolution of Defendants' appeal.

In accordance with Rule 8(a), Defendants initially moved for a stay before the district court, but the district court denied Defendants' motion on June 12, 2026. *See* Ex. 1.

In its March 12, 2026, order and judgment, which Defendants have appealed, the district court enjoined Defendants from applying AHCCCS's long-standing limits for dental, optometry, podiatry, and chiropractic services when those services are provided by a federally-qualified health center (FQHC). ECF 164 (hereafter, "March 12 Order"). An FQHC association and individual FQHCs are the Plaintiffs in this action.

Because almost all AHCCCS services are provided through contracted health plans that are paid at negotiated rates set well in advance, adding new benefits or applying different payment rules when provided by one type of provider and not others requires contractual changes, rate changes, system modifications, and updates to provider and beneficiary manuals, all of which require substantial human and

1

financial resources that could take many months to put in place. In addition, it is likely that AHCCCS will be required to seek additional appropriations from the Arizona State Legislature to fund the new benefits. All of this work would need to be redone—and any increased payments to FQHCs would be recouped—if Defendants prevail in the instant appeal.

A stay would be "less coercive and less disruptive" than implementing the district court's injunction. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). A stay would preserve the status quo. Conversely, implementing the injunction upends decades of Arizona Medicaid policy and practice.

## BACKGROUND

### I. Arizona's Medicaid Program

As explained in more depth in Defendants' opening brief, Dkt. 6.1,[1] the Arizona Health Care Cost Containment System (AHCCCS) is the single state agency responsible for the administration of Arizona's Medicaid program. As part of its role as the Medicaid agency, AHCCCS contracts with eleven health plans to provide Medicaid-covered services to the overwhelming majority of Medicaid beneficiaries throughout the State, and the health plans in turn contract with providers, including federally-qualified health centers (FQHCs) such as Plaintiffs, to deliver services to

---

[1] Documents filed with this Court are identified by docket number preceded by "Dkt." Documents filed with the district court are identified by docket number preceded by "ECF."

2

the plan's enrollees. Ex. 3 ¶ 2. AHCCCS pays its contracted health plans a monthly capitation payment for each enrolled member, which is developed by actuaries and approved by CMS as actuarially sound—that is, the rates are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract" for the time period and the populations covered under the terms of the contract. *See* 42 C.F.R. §§ 438.4, 438.5, 438.7, 438.806. For Medicaid beneficiaries not enrolled with a contracted health plan, AHCCCS pays for covered Medicaid services on a "fee-for-service" basis.

The Arizona Medicaid State plan, which is reviewed and approved by the federal Centers for Medicare & Medicaid Services (CMS), a constituent agency of the U.S. Department of Health and Human Services (HHS), sets forth the basis for claiming federal financial participation in the State's Medicaid expenditures. *See* 42 U.S.C. §§ 1396a(a), 1396a(b), 1396b. AHCCCS covers podiatry, optometry, chiropractic and dental services for adults subject to certain limits set forth in its state plan. (Children receive all medically necessary services, pursuant to a separate Medicaid provision). Consistent with its longstanding interpretation of its State Plan, AHCCCS has never paid for, or required its health plans to cover, FQHC services provided by a dentist, optometrist, podiatrist, or chiropractor beyond the limits applicable to those providers outside of an FQHC. Ex. 2 ¶ 6. Thus, the

3

capitation rates AHCCCS pays to the health plans are premised on the assumption that FQHCs are subject to the same limits as other providers. *See id.*

## II.    Procedural History

On October 28, 2019, Plaintiffs filed a two-count complaint in the District Court of Arizona alleging in the first count that Defendants are violating 42 U.S.C. § 1396a(bb) by "failing or refusing to reimburse FQHCs for the services of dentists, podiatrists, optometrists, and chiropractors." ECF 1 ¶¶ 49–53. In the second count, Plaintiffs alleged that AHCCCS's $1,000 limit on covered emergency dental services for adults is an arbitrary and capricious limit on "FQHC payment rights" as set forth in Section 1396a(bb). *Id.* ¶¶ 54–58.

Defendants moved to dismiss Plaintiffs' complaint, and the district court granted the motion with respect to Plaintiffs' Count I, but denied the motion with respect to Count II. *See* ECF 52 at 12. Plaintiffs then amended their complaint to dismiss Count II and appealed the district court's decision dismissing Count I to this Court. *See* ECF 53, 53-1 ¶¶ 54–58; ECF 54; ECF 75.

On September 2, 2022, this Court vacated in part and reversed in part the order granting Defendants' motion to dismiss. *See Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys.*, 47 F.4th 992 (9th Cir. 2022) (hereafter "*Arizona Alliance*"). In that decision, the Court held that its precedent in *California Association of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013)

4

(*Douglas*), established that the disputed services are a "mandatory benefit" when provided by FQHCs for which Plaintiffs had a "right to reimbursement" under the Medicaid statute enforceable under 42 U.S.C. § 1983. *Arizona Alliance*, 47 F.4th at 998. Accordingly, the panel held that Arizona could not "categorically exclude" adult chiropractic services. *Id.* at 1001–02.[2] With respect to other limits that the State applied to FQHC and non-FQHC providers, the panel remanded with instructions for the district court to rule "on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of 'FQHC services,' are entitled to . . . deference" under *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). *Id.* at 1004–05.

The parties then engaged in additional discovery and in July 2024 briefed cross-motions for summary judgment. *See* ECF 142, 145, 152, 154. Because this Court's definition of the mandatory benefit of FQHC services in the *Douglas* case was based on the Medicare definition of FQHC services, and the Medicare definition of "physician," 738 F.3d at 1015, AHCCCS explained in its motion that the

---

[2] On remand, the district court entered an order enjoining Defendants "from enacting or applying a 'categorical exclusion of all adult chiropractic services' from AHCCCS's coverage of the 'Federally-qualified health center services' mandatory benefit[.]" ECF 104. Shortly before that injunction issued, AHCCCS had amended its state plan to cover up to 20 chiropractic visits per year for adults, plus additional visits if medically necessary subject to prior authorization. ECF 153, at 31.

Medicaid limits it applied to these benefits were comparable to, or better than, the limitations Medicare imposes on the same types of services. ECF 145, at 17–18.

On March 12, 2026, approximately 18 months after the parties filed their cross-motions, the district court issued an order granting summary judgment to Plaintiffs on the ground that there was no evidence that CMS approved Arizona's interpretation of its State Medicaid Plan to apply the same limits to FQHCs that apply to other providers of dental, optometry, podiatry, and chiropractic services. *See* ECF 164. The court accordingly enjoined AHCCCS "from enforcing or applying limitations on mandatory FQHC dental, optometry, and podiatry services that were not approved by CMS, as required by the Medicaid Act." *Id.* at 11. The district court did not address AHCCCS's arguments that it was covering all "mandatory" services and that the limitations it applied to FQHC "mandatory benefits" were comparable to Medicare.

On March 31, 2026, Defendants timely appealed the March 12 Order to this Court. *See* ECF 168. Also on March 31, 2026, AHCCCS filed with CMS a state plan amendment to clarify its state Medicaid plan and more clearly impose on FQHCs the same limitations that apply to other providers of services, including dentists, podiatrists, optometrists, and chiropractors. *See* Ex. 2 ¶ 12. In accordance with CMS regulations, if approved, the state plan amendment will become effective retroactive to January 1, 2026. *See* 42 C.F.R. § 430.20.

On April 8, 2026, Defendants filed in the district court a motion to stay enforcement of the March 12 Order and final judgment pending resolution of the instant appeal. Ex. 4, Ex. 5. Defendants' motion included declarations from two state officials on the substantial operational changes and financial impact of implementing the district court decision, and advised the court that AHCCCS had already submitted a plan amendment to the Centers for Medicare & Medicaid Services ("CMS") to approve application of the service limitations to FQHCs.

On June 12, 2026, the district court denied the stay motion. Ex. 1. In the district court's view, the State's showing of irreparable injury was "weak," stating that the State's assertions of injury were "contingent and speculative," and suggesting that the State should have submitted "data, expert analysis, non-FQHC provider declarations, or utilization projections." Ex. 1 at 5. Because the district court did not find irreparable injury, it required AHCCCS to show a "strong likelihood of success on the merits," and concluded that it had not met this heightened standard. *Id.* at 6.

## ARGUMENT

Defendants now seek from this Court a stay of the March 12, 2026, Order and judgment pursuant to Federal Rule of Appellate Procedure 8. In evaluating a request for a stay, courts consider four factors: (1) whether the stay applicant has demonstrated a likelihood of success on the merits; (2) whether the stay applicant

7

will be irreparably injured absent a stay; (3) whether a stay will "substantially injure" the other party to the proceeding; and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Leiva-Perez*, 640 F.3d at 965–66. In this case, there is a strong likelihood that AHCCCS will prevail on appeal, and the other factors also weigh in favor of granting a stay.

## I.  AHCCCS Has Demonstrated a Likelihood of Success on the Merits.

"[T]o justify a stay, [a movant] need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez*, 640 F.3d at 966. Rather, it is sufficient to demonstrate that the movant will raise on appeal "a substantial case for relief on the merits." *Id.* at 968; *Hilton,* 481 U.S. at 778.

In this case, Defendants have raised two issues on appeal, both of which present a likelihood of success on appeal and a substantial case for relief on the merits. *See* Dkt. 6.1 at 12–35. Both issues involve significant, controlling changes in Supreme Court case law between the time that this case was last before this Court in 2022 and the time of the district court's decision on remand in 2026. *See id.* However, for purposes of this stay petition, and in light of page constraints, AHCCCS focuses only on the first: whether Plaintiffs have a right conferred by 42 U.S.C. § 1396a(bb), enforceable under 42 U.S.C. § 1983, to payment for services beyond the limits that the State has set forth in its state plan applicable to other providers.

The Supreme Court's decision last year in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), represents a sea change in analyzing when a provision of a spending clause statute, such as Medicaid, creates a private right enforceable under Section 1983. This Court's prior decisions in *Douglas* and *Arizona Alliance* holding that the provision under which Plaintiffs have brought suit is privately enforceable are "clearly irreconcilable" with *Medina* and should be rejected "as having been effectively overruled." *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Specifically, *Medina* clarified that the test for determining whether a statutory provision creates a right that can be enforced under Section 1983 is rarely met by any statute, and is especially rare for spending clause statutes such as Medicaid. 606 U.S. at 368–69 (cleaned up); *see also id.* at 375 (referring to the test as a "significant hurdle that will be cleared only in the atypical case" (internal quotation marks omitted)). In so holding, the Court affirmed its holding in *Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002), that only "an unambiguously conferred right [will] support a cause of action brought under § 1983," and disavowed its decisions in *Blessing v. Freestone,* 520 U.S. 329 (1997), and other cases suggesting that a statutory provision "benefiting" a particular class of plaintiffs might be sufficient. 606 U.S. at 375–76.

9

In *Medina*, the Supreme Court analyzed the Medicaid "free choice of provider" provision and concluded that it did not "unambiguously confer" a right that could be enforced under Section 1983. 606 U.S. at 376–80. That conclusion reversed a decision of the Fourth Circuit that had agreed with several other Courts of Appeals, including this one, that the language in that provision met the *Gonzaga* standard. *See Planned Parenthood South Atl. v. Kerr,* 95 F.4th 152, 165 (4th Cir. 2024) (holding that the "free choice of provider" provision "unambiguously conferred" a right); *Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 966–67 (9th Cir. 2013) (same).

In denying the stay petition, the district court held that AHCCCS did not have a strong likelihood of prevailing in its argument that *Douglas* was "clearly irreconcilable" with *Medina* because the *Douglas* decision stated that it was applying the *Gonzaga* framework. Ex. 1 at 8. But the Fourth Circuit decision that the Supreme Court reversed in *Medina* also purported to be applying *Gonzaga*, and this Court's decision in *Betlach,* which reached the same conclusion as the Fourth Circuit, likewise stated that it was applying *Gonzaga,* 727 F.3d at 966. Yet in both cases the courts went on to interpret what constituted an "unambiguously conferred right" by applying the less rigorous standard set forth in *Blessing,* which the Court has now expressly repudiated. 95 F.4th at 164; 727 F.3d at 966. *Medina* specifically instructs courts to "resist the impulse" to follow *Blessing*, stating that they "should

10

not" "consult" it in "asking whether a spending-power statute creates an enforceable individual right." 606 U.S. at 376.

In fact, this Court's analysis in *Betlach* (finding the "freedom of choice provision" to be privately enforceable) and *Douglas* (finding the FQHC payment provision to be enforceable) follows the exact same analytic framework, applying the framework that the Court laid out in *Blessing*. And just as *Betlach* can no longer stand in light of *Medina*, neither can *Douglas*. As the Supreme Court decision in *Medina* makes clear: it is not enough simply to recite the *Gonzaga* standard. Instead, a court must look to see if there is unambiguous "rights-creating" language that serves as an "unmistakable notice" sufficient to "alert" grantees of federal funds that they might be subject to "private suits . . . whenever they fail to comply with a federal funding condition." *Medina,* 606 U.S. at 374 (cleaned up).

Here, the FQHC payment provision that the "State plan shall provide for payment for services . . . furnished by [an FQHC]," 42 U.S.C. § 1396a(bb), and the description of those services as "services of the type" described in the Medicare statute "and any other ambulatory service" covered by Medicaid, 42 U.S.C. § 1396d(a)(2)(C), (*l*)(2), is far from unambiguous notice that the State is subject to suit if it applies the same limits to payment for FQHC services that it applies to all other Medicaid providers.

11

The district court also concluded that AHCCCS had not established a strong likelihood of success on the merits because *Medina* and *Douglas* involved a "materially different statutory provision." Ex. 1 at 8. But since *Medina*, a number of district courts and courts of appeals have concluded that prior precedents in their jurisdictions involving Medicaid provisions quite different from the "free choice of provider" provision were no longer good law. *See, e.g.*, *Anderson v. Crouch*, 169 F.4th 474, 494–97 (4th Cir. 2026) (holding, post-*Medina*, no privately enforceable right under Medicaid provisions in Section 1396a(a)(10)(A), (B)); *Lancaster v. Cartmell*, 162 F.4th 1063, 1068–70 (10th Cir. 2025) (holding, post-*Medina*, no privately enforceable right under Medicaid provision at Section 1396a(a)(8)); *Croffe v. Roberts*, No. 1:25-cv-02036, 2026 U.S. Dist. LEXIS 85228, at *11–12 & n.4 (E.D. Va. Apr. 15, 2026) (unpublished) (holding that *Medina* abrogated prior circuit precedent finding a cause of action in Section 1396a(a)(8)); *Keira M. v. Quin*, No. 3:25-cv-00566, 2026 U.S. Dist. LEXIS 75469, at *86–89 (M.D. Tenn. Apr. 7, 2026) (unpublished) (holding that Medina abrogated Sixth Circuit precedent and finding that Sections 1396a(a)(8), (a)(10), (a)(43)(B), (a)(43)(C), and 1396d(r)(5) do not create privately enforceable rights).

On appeal, this Court will have to undertake the same exercise to determine if *Douglas* and *Arizona Alliance* can be reconciled with *Medina*: they can't. First, the "shall" language that this Court found to be "rights-creating" in *Douglas*, 738 F.3d

12

at 1013, is not meaningfully distinguishable from language that the Court found *not* to be rights-creating in *Medina*. *See* 606 U.S. at 380 (holding that the use of "mandatory terms" is not sufficient to be considered "clear and unambiguous rights-creating language.")

Second, the *Douglas* case largely relied on *Blessing*, now repudiated, in finding that the FQHC payment provision conferred a "benefit" on the FQHCs. As *Medina* makes clear, that case should no longer be "consulted." 606 U.S. at 376.

Third, like the provision at issue in *Medina*, the FQHC payment provision is just one of many requirements that must be included in a state plan, which is subject to administrative enforcement by CMS if a state fails to "comply substantially" with its requirements. *See* 42 U.S.C. § 1396a(a)(15) (requiring payment in accordance with subsection (bb)); § 1396c; *Medina*, 606 U.S. at 378–79. As the Court noted in *Medina,* such "a focus on 'aggregate' compliance suggests that a statute addresses a State's obligations to the federal government, not the right 'of any particular person.'" *Id.* at 379 (cleaned up). A provision can only "overcome this weighty statutory evidence," if there is "explicit and unmistakable 'rights[-]creating language.'" *Id.* Section 1396a(bb)'s direction that "a State plan shall provide for payment for services . . . furnished by [an FQHC]" does not clear that hurdle.

But even if *Douglas* and this Court's prior opinion in *Arizona Alliance* survive *Medina,* the district court went one step further than both, because nothing in Section

13

1396a(bb) suggests that FQHCs have an enforceable right that would allow a federal court to override a State's limits on the services for which Medicaid will reimburse. Here, there is no dispute that AHCCCS has long interpreted its plan as applying the same limits to services provided by FQHCs as apply to all other providers and "a federal court is bound to accept that a State Medicaid plan means what the State says it means." *Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*, 179 F.3d 38, 47 (2d Cir. 1999); *see also Missouri Dep't of Social Services*, DAB Decision No. 1412 (1993), 1993 HHSDAB LEXIS 1160, 1993 WL 742589 (H.H.S.) ("[D]eference must be given to a state's own interpretation of its state plan if the state's interpretation is reasonable[.]"); *Kan. Health Policy Auth. v. HHS*, 798 F. Supp. 2d 162, 169 (D.D.C. 2011) (same).

Arizona's interpretation of its plan as applied to payment for FQHC services is clearly reasonable: AHCCCS covers all mandatory FQHC services as required by this Court's decisions in *Douglas* and *Arizona Alliance*, *see* Dkt. 6.1 at 26–28. Consistent with the definition of FQHC services in 42 U.S.C. § 1396d(*l*)(2), AHCCCS covers *all* services that Medicare would cover when provided by an FQHC, as well as *all* other ambulatory Medicaid services. *Id.* The district court's apparent conclusion that the FQHCs have an unambiguously conferred right in the statute, enforceable under Section 1983, to be paid for additional services unless the

14

limits have been expressly presented to CMS for approval is irreconcilable with *Medina* and cannot stand.

## II. AHCCCS Will Be Irreparably Harmed Absent a Stay.

To show irreparable injury, a movant must show "that there is a probability of irreparable injury if the stay is not granted." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). In a similar case, also involving FQHC reimbursement, one court has found that the expenditure of public administrative resources to change the status quo to comply with the terms of an order constituted a potential harm that could not be repaired if the order were reversed on appeal. *See Fam. Health Ctrs. of Sw. Fla., Inc. v. Sec'y, Fla. Agency for Health Care Admin.*, No. 2:21-cv-278, 2023 U.S. Dist. LEXIS 139844, at *4–5 (M.D. Fla. Aug. 10, 2023) (unpublished).

In this case, AHCCCS will suffer irreparable harm absent a stay due to the March 12 Order's immediate ramifications of eliminating the limitations AHCCCS has long applied to coverage of optometry, dental, chiropractic, and podiatry services provided by FQHCs. As explained in the declaration of Jeffery Tegen, submitted together with AHCCCS's application to the district court, the March 12 Order has already raised critical and expansive questions of the Order's effect on health plans' obligations to cover and pay for services provided by FQHCs. *See* Ex. 2 ¶ 11. Given that existing appropriations and already-established capitation rates for the present

15

contract year were premised on AHCCCS's long-time application of the same limitations on FQHCs' provision of optometry, dental, podiatry, and chiropractic services that apply to other providers' provision of such services, the Order's injunction on the application of such limits will immediately require AHCCCS to modify information systems and develop communications and guidance for enrolled members, the public, the provider community, and the health plans explaining the implications of the Order, requiring significant expenditure and diversion of human, fiscal and administrative resources.

In addition, to the extent capitation rates are being developed for the next contract year, AHCCCS, its actuaries, and the health plans must consider and take into account the Order's effect to ensure that the new capitation rates are actuarially sound. If the March 12 Order is reversed on appeal or if CMS approves the state plan amendment to clarify limitations for services provided at FQHCs, all of those efforts will be for naught and will need to be undone, imposing additional administrative burden.

Additionally, AHCCCS will suffer irreparable harm absent a stay if the March 12 Order is reversed on appeal or if CMS approves AHCCCS's state plan amendment to clarify the limitations on services provided by FQHCs because AHCCCS will then need to spend time and money seeking recoupments of any fee-for-service payments made to FQHCs in excess of those limits that were paid after

16

and as a result of the March 12 Order. Such an endeavor would divert staff time and funding, which could be entirely avoided if the March 12 Order were stayed pending appeal.

The district court's characterization of these administrative burdens and costs as the costs of complying with an injunction unreasonably minimized the substantial waste that would result if Defendants were to implement the March 12 Order and then prevail on appeal. *See* Ex. 1 at 4–6. The court's analysis also overlooked the fact that even if the Order were affirmed on appeal, Defendants could come into compliance with the injunction with little disruption for Plaintiffs beyond a brief delay while the appeal runs its course. This tips the balance in favor of granting a stay.

### III. A Stay Will Not Injure Plaintiffs.

Plaintiffs have been operating their businesses for many years under the service limitations AHCCCS has applied to their reimbursement. A relatively brief delay in enforcing the March 12 Order will result in Plaintiffs receiving less reimbursement in the short term, but there is no evidence that the funding shortfall will detrimentally injure any of the Plaintiffs.

Moreover, if CMS approves the pending state plan amendment to clarify and reinstate those limitations, the new limitations will be deemed to have taken effect on January 1, 2026. Therefore, the clarified limitations would apply to any claims

17

for payment for services the FQHCs have rendered since the March 12 Order was issued and through the duration of the appeal. In other words, assuming CMS approves AHCCCS's state plan amendment, a stay will have no effect on the Plaintiffs other than to prevent Plaintiffs from having to repay AHCCCS for any payments made in excess of the limitations once the state plan is approved. (AHCCCS does not understand the basis of the district court's suggestion that the pending plan amendment might not apply to FQHC mandatory benefits, Ex. 1, at 11; the purpose is to make clear that the same limitations apply to these benefits as apply to other providers. To the extent that *Douglas* defined the "mandatory benefits" by reference to Medicare, 738 F.3d at 1015, AHCCCS has established that it covers the disputed services at least to the same extent that Medicare does, ECF 145 at 17–18).

## IV. The Public Interest Strongly Favors a Stay to Avoid Destabilizing Arizona's Medicaid Provider Network.

The public interest favors staying the March 12 Order. Like AHCCCS, Arizona's health plans will have to expend administrative resources to implement and then potentially unwind the March 12 Order if the Order is reversed on appeal or if CMS approves the state plan amendment. Additionally, by removing the service limitations for certain services furnished at FQHCs, the March 12 Order threatens to divert patients from other network providers of optometry, podiatry, chiropractic, and dental services to FQHCs, which could destabilize the existing

18

ecosystem of providers of these services and prompt providers to leave or limit their participation in the Medicaid program, thereby potentially reducing the availability of services for Medicaid beneficiaries. The district court characterized the risks to Arizona's provider network as "contingent and speculative," Ex. 1 at 5, 13–14, but there is no basis for reaching such a conclusion. To the contrary, the evidence presented to the district court and attached to this motion clearly indicates that AHCCCS will have to make additional payments to all FQHCs, develop and implement a change to account for the current capitation rates paid to the health plans, adjust its rates for future contract years, work with CMS to implement necessary changes to its state plan, and then potentially undo all of that work depending on the outcome of the appeal or CMS's review of the pending state plan amendment.

Additionally, to the extent the district court determined that the public's interest is in preserving access to covered services for Medicaid beneficiaries, *see* Ex. 1 at 13–14, a stay best serves that interest because it will avoid dissuading non-FQHC providers from joining or continuing to participate in the Medicaid program if beneficiaries transition to FQHC providers to receive services that they cannot receive from other providers, and it will prevent damaging the relationship between AHCCCS and its health plans if the plans are faced with new, unexpected costs by having to pay FQHCs without limitation. The district court found the State's

19

evidence to be "contingent and speculative," and credited the declaration of one FQHC, submitted by Plaintiffs, that "the relationship between FQHCs and private dental practices is not primarily competitive," but instead often involves referrals from the private providers, because the FQHC provides a greater range of services. Ex. 1 at 5. If anything, this confirms AHCCCS's concern that private dental clinics will further limit their participation in Medicaid.

By preserving the status quo, a stay of the March 12 Order will avoid these immediate consequences and disruptions to Arizona's Medicaid program, and the stay will not harm the public interest beyond merely delaying additional reimbursement for FQHCs while the appeal is pending.

***

In sum, the balance of interests favors staying the district court's March 12 Order and judgment pending the outcome of the present appeal to avoid AHCCCS having to implement and then unwind significant changes to its Medicaid program if either this Court reverses the judgment or CMS approves the pending state plan amendment.

<strong>CONCLUSION</strong>

For the foregoing reasons, Defendants ask the Court to stay the district court's March 12 Order and judgment pending resolution of this appeal.

20

Respectfully submitted,

Dated: June 29, 2026

/s/ Caroline M. Brown
Caroline M. Brown
Kendra Doty
Brown & Peisch PLLC
1220 19th Street NW, Suite 210
Washington, D.C. 20036
(202) 499-4258
cbrown@brownandpeisch.com
kdoty@brownandpeisch.com

*Counsel for Defendants-Appellants*

21

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitations set forth in Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(a)(5)–(6) and Circuit Rule 27-1(1)(d). It is set in 14-point Times New Roman font, which is proportionally spaced. The foregoing contains 4,728 words, as calculated by Microsoft Word's word count, excluding the sections identified in Federal Rule of Appellate Procedure 32(f).

Dated: June 29, 2026

/s/ Caroline M. Brown
Caroline M. Brown

## CERTIFICATE OF SERVICE

I, Caroline M. Brown, hereby certify that a copy of the foregoing was sent by ECF to all counsel of record.

Dated:  June 29, 2026

/s/ Caroline M. Brown
Caroline M. Brown

23

**EXHIBIT - 1**

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance For Community Health Centers, et al., | No. CV-19-00517-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Health Care Cost Containment System, et al., | |
| Defendants. | |

On March 12, 2026, the Court granted judgment in favor of Plaintiffs.[1] (Doc. 164.) On April 8, 2026, Defendants[2] filed a Motion to Stay the Judgment Pending Appeal. (Doc. 170.) On April 27, 2026, Plaintiffs filed a Motion for Award of Attorney's Fees. (Doc. 172.) Defendants thereafter filed a Motion to Stay the Deadline to Respond to Plaintiffs' Motion for fees. (Doc. 177.) Both motions are fully briefed. (*See* Docs. 170, 171, 176; Docs. 177, 178, 179.) For the reasons that follow, the Court will deny Defendants' motions.

## I.      BACKGROUND

On September 2, 2022, the Ninth Circuit vacated in part and reversed in part this Court's Order granting Defendants' Motion to Dismiss. *See Arizona All. for Cmty. Health Centers v. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992 (9th Cir. 2022)

---

[1] Plaintiffs are Arizona Alliance for Community Health Centers (AACHC), Arizona nonprofit organizations, members of AACHC, Section 330 health centers, and Federally Qualified Heath Centers (FQHCs) participating in Arizona's Medicaid program.
[2] Defendants are Arizona Health Care Cost Containment System ("AHCCCS") and its director, Carmen Denise Heredia, (collectively, "Arizona").

(hereafter "*Ariz. All.*"). The Ninth Circuit held that Arizona must cover each component of the mandatory FQHC services benefit, although certain limitations may be permissible. *Id.* at 1001. The court also concluded that Arizona's categorical exclusion of adult chiropractic services violated the Medicaid Act. *Id.* at 1001–02 (citing *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1010 (9th Cir. 2013)). In evaluating Arizona's limitations on podiatry, optometry, and dental services, the court examined whether CMS had articulated reasons for approving the State Plan Amendments ("SPAs") that Arizona contends authorize those limitations on mandatory FQHC services benefits. *Id.* at 1002–1005. The court found that "[t]he record lacks *any* evidence about CMS's reasoning for approving Arizona's [Medicaid] plan and SPAs" and remanded the case so the parties could further develop the record and this Court could "rule in the first instance on whether Arizona's limitations on adult dental, optometry, and podiatry services, which are components of the mandatory benefit of 'FQHC services,' are entitled to *Chevron* deference." *Id.* at 1004–1005 (emphasis in original).

Following remand, the parties engaged in additional factfinding consistent with the Ninth Circuit's directive and filed cross-motions for summary judgment. (*See* Docs. 142, 145, 152, 154.) In a March 12, 2026 Order, this Court granted Plaintiffs' Motion for Summary Judgment and denied Defendants' Cross-Motion for Summary Judgment, concluding that Defendants violated 42 U.S.C. § 1396a(bb) by applying unapproved limitations to mandatory FQHC services. (Doc. 164.) The Court found that CMS did not approve Defendants' interpretation of the State Plan and that the record contained no evidence that CMS considered or authorized applying limitations from optional benefits to mandatory FQHC dental, optometry, and podiatry services. The Court therefore permanently enjoined Defendants from enforcing those limitations.

On March 31, 2026, Defendants timely filed a notice of appeal from the Court's March 12, 2026 Order (Doc. 164) and the Clerk's Judgment (Doc. 165).

//

//

- 2 -

## II.    DISCUSSION

Defendants move to stay the Court's March 12, 2026 Order and Judgment pending appeal. They contend that a stay is warranted because they are likely to succeed on appeal, will suffer irreparable harm absent a stay, and the balance of equities and public interest favor maintaining the status quo. (Doc. 170-1.) Defendants also argue that a stay is warranted because, on March 31, 2026, they filed a SPA with CMS expressly incorporating the service limits applicable to other providers to FQHCs. (*Id.* at 5.) If approved, the SPA would be effective retroactive to January 1, 2026. Plaintiffs oppose the motion, arguing that Defendants have not met the stringent requirements for a stay pending appeal. (Doc. 171.)

### A.  Legal Standard

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (citation omitted). Rather, it is "an exercise of judicial discretion," and "the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* In deciding whether to grant a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426 (cleaned up). "The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (cleaned up).

Under the Ninth Circuit's sliding scale approach, "the elements of the [] test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1007. When there is a weak irreparable harm showing, the applicant must make a stronger showing of a likelihood of success on the merits. *Id.* at 1010. The Court addresses the irreparable harm factor first because its resolution informs the showing required on the "likelihood of success on the merits" element.

**B. Defendants Have Not Shown Irreparable Harm**

An applicant must show that a stay is necessary to avoid *likely* irreparable injury to the applicant while an appeal is pending. *Id.* at 1007. A mere possibility is insufficient. *Id.* The applicant's irreparable harm burden "is higher than it is on the likelihood of success prong, as [it] must show that an irreparable injury is the more probable or likely outcome." *Id.* "[A] stay may not issue" absent such a showing. *Id.*

Defendants contend they will suffer irreparable harm because the Court's Order requires immediate changes to Arizona's Medicaid program, including revising capitation rates and expending administrative resources that may later need to be undone if the Order is reversed or CMS approves the pending SPA. (Doc. 170-1 at 13–14.) They also assert that implementing the Order could disrupt the Medicaid provider network by shifting utilization toward FQHCs and increasing program costs. (*Id.*)

Defendants cannot transform the burdens of complying with an injunction that remedies a violation of federal law into irreparable injury. The Ninth Circuit has recognized that the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), *rev'd on other grounds sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). That principle applies with full force to each harm Defendants identify. Injuries consisting of compliance costs, administrative burdens, or expenditures of time and resources are generally not irreparable. *See Al Otro Lado*, 952 F.3d at 1008 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough."). The specific harms Defendants identify—revising capitation rates, seeking appropriations, issuing guidance, adjusting program administration, and expending resources to comply with the Court's Order—are precisely the kinds of compliance costs and administrative burdens that do not constitute irreparable harm. Because the Court has determined that Defendants' current reimbursement practices violate federal law, the costs of bringing Arizona's Medicaid program into compliance do not rise to the level of

irreparable injury, however substantial those costs may be.

Defendants characterize these harms as distinct from ordinary compliance costs because they may be required to implement the Court's Order and later unwind those programmatic changes if they prevail on appeal or if CMS approves the pending SPA. (Doc. 176 at 6–7.) But that "implement and undo" theory does not transform compliance with the Court's Order into irreparable harm. These compliance costs and administrative burdens do not become irreparable simply because Defendants may later need to reverse them. The possibility that Defendants may later need to unwind those changes if the Ninth Circuit reverses or if CMS approves the pending SPA remains contingent and does not establish likely, imminent irreparable injury.

Defendants' asserted provider-network harms are also contingent and speculative. Defendants have not shown that implementation of the Order is likely to destabilize Arizona's Medicaid provider network, as opposed to requiring administrative changes and increased reimbursement for services the Court has determined must be covered as mandatory FQHC services. Defendants' argument depends on several contingencies, including that beneficiaries will shift care to FQHCs; non-FQHC providers will reduce Medicaid participation as a result; the Ninth Circuit will reverse this Court's determination; or CMS will approve the pending SPA. Defendants assert that if any of these contingencies occur, they will then need to unwind programmatic changes or seek recoupment.

Although Defendants' declaration expresses concern that implementation may disrupt provider relationships and shift members toward FQHCs, Defendants submit no data, expert analysis, non-FQHC provider declarations, or utilization projections showing that those asserted network harms are likely to occur. (Doc. 170-3 ¶ 8.) Plaintiffs, on the other hand, submit provider declaration evidence addressing that concern in the dental-services context: according to Plaintiffs' evidence, the relationship between FQHCs and private dental practices is not primarily competitive, but instead often requires referrals from private practices to FQHCs. (Doc. 171-2 ¶¶ 19–22.) That evidence cuts against Defendants' assertion that expanded FQHC reimbursement is likely to draw dental patients

- 5 -

away from non-FQHC providers Thus, Defendants' contingent future harms do not satisfy the requirement of a likely, imminent, and irreparable injury.[3] *See Nken*, 556 U.S. at 434 (requiring more than a mere possibility of relief).

Because Defendants' showing regarding irreparable harm is weak, Defendants must make a strong showing of a likelihood of success on the merits in order to obtain a stay. *See Al Otro Lado*, 952 F.3d at 1010. Defendants fail to do so.

## C. Defendants Have Not Shown a Strong Likelihood of Success on the Merits

Defendants argue that they need not show they are more likely than not to prevail on appeal and that it is sufficient to raise "a substantial case for relief on the merits." (Doc. 170-1 at 10; Doc. 176 at 2–4.) They assert that three arguments they intend to raise on appeal satisfy that standard: (1) the recent case of *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025), undermines *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013), which held that FQHCs may enforce 42 U.S.C. § 1396a(bb) through 42 U.S.C. § 1983; (2) after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the relevant inquiry is whether Arizona's interpretation complies with § 1396a(bb), not whether CMS approved the challenged limitations; and (3) this Court erred in concluding that CMS did not approve the challenged limitations. (Docs. 170-1 at 10–12, 176 at 3–5.)[4] The Court concludes that none of these issues presents "a substantial case for relief on the merits."

### 1. *Medina* Does Not Clearly Abrogate Binding Ninth Circuit Precedent

In *Medina*, the Supreme Court considered whether Medicaid's "any-qualified-

---

[3] Plaintiffs submit evidence that Arizona already maintains a reconciliation process capable of implementing any recoupments that might be necessary if Defendants prevail on appeal, further undermining any claim that recoupment efforts would constitute irreparable harm. (Doc. 171-1 ¶¶ 4–17.) Defendants acknowledge that any additional payments made pursuant to the Court's Order may be recouped if they prevail on appeal. (Doc. 170-1 at 14.)

[4] Defendants incorrectly argue that the parties' dispute over these issues is sufficient to establish a substantial case for relief. (Doc. 176 at 1–2.) The mere existence of disputed legal issues does not, by itself, satisfy Defendants' burden. Otherwise, every contested appeal would satisfy the merits prong. *Nken* requires more than a "mere possibility" of relief, 556 U.S. at 434, and *Leiva-Perez* requires a substantial case for relief on the merits—not merely a showing that the parties disagree. 640 F.3d at 967–68.

provider" provision, 42 U.S.C. § 1396a(a)(23)(A), created a privately enforceable right under § 1983 for individual Medicaid beneficiaries. The court held that it did not because the provision lacked "clear and unambiguous rights-creating language." *Medina*, 606 U.S. at 380. The court explained that § 1396a(a)(23)(A) "speaks to what a State must do to participate in Medicaid" and appears within a subsection outlining "scores of things a state plan must include to qualify for federal funding." *Id.* at 377, 379. The court emphasized that "[a]ll of § 1396a(a)'s requirements are directed to the Secretary of Health and Human Services," unlike the Federal Nursing Home Reform Act provisions at issue in *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), which expressly guaranteed individual "rights." *Id.* at 378–80.

The Supreme Court instructed lower courts to apply the framework articulated in *Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002), and *Talevski* when evaluating whether Spending Clause statutes create privately enforceable rights under § 1983. *Medina,* 606 U.S. at 367–69, 375–76. Specifically, the court explained that "[t]o prove that a statute secures an enforceable right, privilege, or immunity, and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question clearly and unambiguously uses rights-creating terms" and "display[s] an unmistakable focus on individuals like the plaintiff." *Id.* at 368 (internal quotation marks and brackets omitted) (quoting *Gonzaga Univ.*, 536 U.S. at 284, 290). The court also emphasized that "spending-power statutes like Medicaid are especially unlikely" to satisfy this "stringent" and "demanding" standard. *Medina*, 606 U.S. at 368–69.

Defendants assert *Medina* casts doubt on whether 42 U.S.C. § 1396a(bb) creates an enforceable right under 42 U.S.C. § 1983, as the Ninth Circuit held in *California Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1013 (9th Cir. 2013), and may require dismissal of this action. (Docs. 170-1 at 10–11, 176 at 2–5.) Defendants argue that "in light of *Medina's* clarification of the standard for evaluating whether a statute passed pursuant to Congress's spending power confers a privately enforceable cause of action, it is an open question whether *Douglas* remains good law." (Doc. 176 at 4.)  This argument is not

- 7 -

persuasive because *Douglas* applied the standard identified in *Medina*.

Intervening Supreme Court authority must be "clearly irreconcilable" with Ninth Circuit precedent to overrule it. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Defendants' *Medina* argument does not show a likelihood of success on appeal or present a substantial case for relief because *Medina* does not "undercut the theory or reasoning underlying [*Douglas*] in such a way that the cases are clearly irreconcilable." *Id.* *Douglas* applied the same *Gonzaga* framework identified in *Medina,* but to a materially different statutory provision. In *Douglas*, the Ninth Circuit held that § 1396a(bb) reflects Congress's intent to "create new rights enforceable under § 1983 . . . in clear and unambiguous terms." *Douglas*, 738 F.3d at 1013 (quoting *Gonzaga Univ.*, 536 U.S. at 290). The court explained that § 1396a(bb)(1) specifically identifies Federally Qualified Health Centers and Rural Health Clinics as named beneficiaries and provides that state Medicaid plans "shall provide for payment for services" furnished by those entities. *Id.* The court concluded the statutory right to payment "is neither vague nor amorphous," that the statute imposes a mandatory obligation on states, and that the provision "is not general or administrative but contains specific rights-creating language." *Id.* That analysis satisfies the standard *Medina* reaffirmed.

Unlike the provision at issue in *Medina*—which appeared within a list of administrative state plan requirements directed at the Secretary of HHS and "makes perfect sense if it speaks only to a State's duties to the federal government," *Medina*, 606 U.S. at 379—§ 1396a(bb) uses specific payment language directed at an identifiable class of named beneficiaries. *Medina* did not address § 1396a(bb), the FQHC reimbursement framework, or *Douglas*, and did not hold that Medicaid provisions are categorically unenforceable under § 1983. Moreover, every circuit to have considered the issue— whether § 1396a(bb) is enforceable through § 1983—has concluded that it is. *See Douglas*, 738 F.3d at 1012 n.1; *see also Family Health Ctrs. of Sw. Fla., Inc. v. Secretary, Fla. Agency for Health Care Admin.*, No. 23-10992, 2025 WL 1171609 (11th Cir. Apr. 22, 2025) (applying § 1396a(bb) without questioning enforceability); *Legacy Cmty. Health*

- 8 -

*Servs., Inc. v. Smith*, 881 F.3d 358, 371 n.13 (5th Cir. 2018) (collecting cases from First, Third, and Fourth Circuits holding § 1396a(bb) enforceable under § 1983).

### 2. Defendants' Limitations Violate § 1396a(bb) Both for Lack of CMS Approval and on Their Merits

Defendants argue that, after *Loper Bright*, the Court should have independently determined whether § 1396a(bb) permits Arizona to apply the challenged limitations to FQHC services, without regard to CMS's understanding or interpretation of the limitations and how they were applied to FQHCs. (Docs. 170-1 at 11–12; 176 at 4–5.) Defendants assert their appeal presents a substantial case for relief on the merits by asking the Ninth Circuit to itself interpret and apply the statutory requirements as required by *Loper Bright*. (Doc. 170-1 at 12.) This argument fails for two reasons.

First, *Loper Bright* does not eliminate the statutory and regulatory requirement that a state Medicaid plan, and any material amendment to that plan, be approved by CMS before it may be enforced. *See* 42 U.S.C. § 1396a(b); 42 C.F.R. § 430.12(c). That approval requirement exists independently of *Chevron* deference because it derives from the Medicaid Act and its implementing regulations, not from judicial deference to CMS's interpretation. *Loper Bright* requires courts to exercise independent judgment when interpreting federal statutes and eliminates *Chevron* deference to agency interpretations. *Loper Bright*, 603 U.S. at 412. Thus, even after *Loper Bright,* Arizona may not enforce limitations on the mandatory FQHC services benefit unless those limitations are approved as part of the State Plan and comply with the Medicaid Act. The Court's March 12, 2026 Order did not apply *Chevron* deference. Rather, the Court determined, based on the fully developed record, that Defendants violated § 1396a(bb) by applying limitations to mandatory FQHC services that CMS did not approve and that were not authorized by Arizona's State Plan. (Doc. 164.) Defendants have not shown that *Loper Bright* undermines that conclusion.

Second, setting aside the absence of CMS approval, Defendants have not shown that their proposed limitations would comply with § 1396a(bb)'s substantive requirements even

- 9 -

if CMS had approved or were to approve the limitations, which independently diminishes their argument that they would likely succeed on appeal.[5] Defendants are correct that states have "discretion to impose limitations to eligibility for and the extent of medical services." (Doc. 176 at 5.) The Supreme Court has recognized that the Medicaid Act "gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interest of the recipients.'" *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985)). Federal regulations likewise permit states to impose appropriate limits based on medical necessity or utilization-control procedures. 42 C.F.R. § 440.230(d).

But that discretion is not unlimited. While states have considerable discretion to design and administer their Medicaid programs, that discretion exists only so long as the state plan complies with federal Medicaid requirements. *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005) (*citing Lewis v. Hegstrom*, 767 F.2d 1371, 1373 (9th Cir. 1985)). A covered service must be "sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). As the Ninth Circuit explained in this case, although states have discretion to impose limitations on eligibility for and the extent of medical services, exclusions of covered FQHC services, "even if only for adults," are "more akin to impermissible categorical exclusions than mere limitations." *Ariz. All.*, 47 F.4th at 1001.

The Ninth Circuit has held that FQHC services are a standalone mandatory Medicaid benefit and include services furnished by dentists, podiatrists, optometrists, and chiropractors. *Id.* at 995; *Douglas*, 738 F.3d at 1014–16. Thus, the relevant question is not merely whether Arizona may impose some limits; it is whether Arizona's proposed limits

---

[5]  The March 12 Order concluded that Defendants violated § 1396a(bb) by applying limitations to mandatory FQHC dental, optometry, and podiatry services that CMS had not approved. (Doc. 164.) That conclusion was sufficient to resolve the parties' cross-motions for summary judgment. Defendants' stay briefing raises a related issue: whether the challenged limitations, even if expressly approved by CMS through the pending SPA, would themselves comply with the Medicaid Act. (Doc. 170-1 at 11–12.) The Court addresses that issue here for purposes of assessing Defendants' likelihood of success on appeal and the effect of potential CMS approval.

preserve the mandatory FQHC services benefit required by § 1396a(bb) and leave those services sufficient in amount, duration, and scope to reasonably achieve their purpose. *See* 42 C.F.R. § 440.230(b), (d). Defendants have not made that showing.

The pending SPA does not appear to create limitations tailored to the mandatory FQHC services benefit. Instead, Defendants represent that the SPA "expressly incorporat[es] the service limits applicable to other providers to federally qualified health centers." (Doc. 170-1 at 5.) But the Ninth Circuit has already rejected Arizona's interpretation of § 1396d(a)(2)(C), which would have required states to cover "only those FQHC services that the state chooses to include in the state Medicaid plan." *Ariz. All.*, 47 F.4th at 998–99. The Ninth Circuit explained that such an interpretation "would enable a state to categorically exclude all coverage for all FQHC services" and "is contrary to the plain language and purpose of the statute." *Id.* at 999. Thus, Defendants' proposed SPA, which merely imports limitations from other provider or benefit categories, would not, without more, establish that Arizona has preserved the mandatory FQHC services benefits required by § 1396a(bb).

Nor have Defendants shown that the proposed limitations would leave the relevant FQHC services sufficient in amount, duration, and scope to reasonably achieve their purpose. Arizona's adult dental limitation restricts coverage to emergency dental services, such as medically necessary extractions or treatment for acute infections, up to $1,000 per year, with limited non-emergency dental coverage for elderly and developmentally disabled beneficiaries in long-term care facilities. *Ariz. All.*, 47 F.4th at 996–97. Its adult optometry limitation covers examination and treatment of medical conditions of the eye and prescriptive lenses only when used as the sole prosthetic device following cataract surgery. *Id.* at 997. Its podiatry limitation covers adult podiatry services only when ordered by a primary care provider and documented in the medical record. *Id.* at 996–97. Some of these restrictions may be permissible utilization controls in the abstract. But Defendants have not shown that, as applied to the mandatory FQHC services benefits, they preserve the covered FQHC dental, optometry, and podiatry services required by § 1396a(bb), or

that they leave those services sufficient in amount, duration, and scope to achieve their purpose. *See* 42 C.F.R. § 440.230(b), (d). Thus, the possibility of future CMS approval of the limitations does not establish a strong likelihood of success on appeal or a substantial case for relief.

### 3. Disagreement with the Court's Factual and Legal Conclusions Does Not Establish a Substantial Case for Relief

Defendants' third argument does not present a substantial case for relief. Defendants disagree with the Court's conclusion that CMS did not approve Arizona's application of optional-benefit limitations to mandatory FQHC services, but they identify no factual error, newly discovered evidence, or intervening legal authority that would call that conclusion into question. The Court's March 12 Order rested on the expanded record developed after remand, including the absence of express language in the State Plan applying optional-benefit limitations to mandatory FQHC Services and Defendants' reliance on Arizona's longstanding interpretation of SPA 99-04 rather than any SPA or CMS communication showing approval of that interpretation. (Doc. 164 at 4, 6, 8–9.) Defendants' disagreement with the Court's application of those facts to the governing legal standard does not establish a substantial case for relief on appeal. A stay is not warranted simply because a party seeks appellate review of a decision with which it disagrees. *See Nken*, 556 U.S. at 433–34.

### D. A Stay Would Substantially Injure Plaintiffs

Because Defendants fail to establish the first two *Nken* factors, the Court need not address the remaining two factors. *See Al Otro Lado*, 952 F.3d at 1007 ("The first two factors are the most critical; the last two are reached only once an applicant satisfies the first two factors.") (cleaned up). Even so, factors three and four also do not support Defendants' request to stay.

The third factor considers "whether issuance of the stay will substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. Defendants argue that a stay will not substantially injure Plaintiffs because they have historically operated under the existing reimbursement limitations and any delay would result only in reduced

- 12 -

payments. (Doc. 170-1 at 15.) Defendants also contend that, if CMS approves the pending SPA with retroactive effect, Plaintiffs will ultimately be subject to the same limitations regardless. (*Id.*) Plaintiffs respond that a stay would delay their receipt of statutorily required reimbursement for FQHC services and impair their ability to provide care to Medicaid beneficiaries. (Doc. 171 at 17–19.) Plaintiffs also argue that because FQHCs must provide primary health care and related services to patients regardless of ability to pay, unreimbursed Medicaid services force them to subsidize Arizona's Medicaid program with Section 330 grant funds. (*Id.* at 17–18.) Plaintiffs submit evidence that continued underpayment has caused millions of dollars in unreimbursed costs, staffing reductions, underused dental facilities, and risk of further service cuts affecting Medicaid beneficiaries. (Doc. 171-2 ¶¶ 8–10; Doc. 171-3 ¶¶ 14–15; Doc. 171 at 17–19.)

The third factor weighs against a stay. The Court has determined that Defendants' current reimbursement practices violate federal law. A stay would delay enforcement of that determination, postpone payments to which Plaintiffs have been found entitled under federal law and for which they will not otherwise get reimbursed, and require Plaintiffs to continue operating under reimbursement levels that the Court has determined are inconsistent with the Medicaid Act. Plaintiffs are FQHCs that rely on reimbursement for mandatory services under the Medicaid Act. Plaintiffs have shown that continued underpayment has affected and will continue to affect their ability to provide services, including through impacts on staffing, service availability, and access to care for Medicaid beneficiaries. Accordingly, a stay would result in more than minimal injury to Plaintiffs and the populations they serve.

### E.  The Public Interest Weighs Against a Stay

Defendants argue that the public interest favors a stay because implementing the Court's Order would destabilize Arizona's Medicaid provider network and require significant administrative adjustments. (Doc. 170-1 at 15–16.) They contend that a stay would preserve the status quo pending appeal. (*Id.*)

As discussed in Section II.B., Defendants' asserted provider-network harms are

speculative, and Defendants have not submitted data, expert analysis, non-FQHC provider declarations, or utilization projections showing that those asserted network harms are likely to occur. In addition, although the Court recognizes Defendants' asserted administrative and budgetary concerns, those concerns do not outweigh the public interest in enforcing federal Medicaid requirements and ensuring access to covered services for Medicaid beneficiaries. *See M.R. v. Dreyfus*, 697 F.3d 706, 737–38 (9th Cir. 2012). The public interest does not favor preserving an unlawful status quo to spare a state the costs of compliance with federal law.

This principle applies with particular force here. As the Court has determined, Defendants' current reimbursement practices violate the Medicaid Act. A stay would delay prospective compliance with the Court's injunction and allow Defendants to continue enforcing reimbursement limitations the Court has found unlawful. The public interest therefore favors implementation of the Court's Order, not continued enforcement of unlawful limitations on mandatory FQHC services.

### F.  Defendants Have Not Justified an Unsecured Stay

Plaintiffs argue that Defendants' motion is procedurally deficient because Defendants have not proposed a bond, alternative security, or other terms that would secure Plaintiffs' rights while the appeal is pending. (Doc. 171 at 3–4.) Defendants respond that Rule 62(d) gives the Court discretion to enter a stay without requiring a bond or other security. (Doc. 176 at 7–8.)

Rule 62(d) permits a court to stay an injunction "on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Courts have discretion to accept security in forms other than a bond. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1367 (9th Cir. 1990); *Int'l Telemeter Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985). Where no security is posted, the grant or denial of a stay strictly rests within the district court's discretion. *See Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir. 1977). Defendants request an unconditional stay. They have proposed no bond, no alternative security, and no other terms designed to protect Plaintiffs'

rights while the appeal is pending.

Defendants argue that security is unnecessary because Arizona is a solvent sovereign. (Doc. 176 at 7–8.) But Plaintiffs do not seek only to protect the collectability of a money judgment. Plaintiffs seek prospective enforcement of an injunction requiring Defendants to stop applying reimbursement limitations the Court has found unlawful. A stay would delay that prospective compliance and require Plaintiffs to continue providing mandatory FQHC services under reimbursement practices the Court has determined are inconsistent with the Medicaid Act. Arizona's solvency does not address those harms or explain why an unconditional stay would adequately protect Plaintiffs' interests during the appeal.

Defendants further contend that, if the pending SPA is approved retroactive to January 1, 2026, Plaintiffs will not be entitled to additional reimbursement regardless of the appeal's outcome, making any security unnecessary. (Doc. 176 at 8.) But as the Court has explained, Defendants have not shown that the pending SPA would comply with the Medicaid Act's substantive requirements even if CMS approves it. *See supra* Section C.2. The SPA therefore cannot be assumed to eliminate Plaintiffs' interest in prospective compliance with the Court's Order. Defendants have proposed nothing to protect Plaintiffs' rights while the appeal is pending. Their failure to propose any terms that would secure Plaintiffs' rights provides an additional basis to deny the motion.

### III.    Motion to Stay Consideration of Plaintiffs' Motion for Attorney's Fees

Defendants' motion to stay their deadline to respond to Plaintiffs' motion for attorney's fees rests on the same arguments presented in their motion to stay the judgment pending appeal—that the appeal raises serious legal questions with significant potential to affect this Court's consideration of fees. (Doc. 177-1 at 4.)

The Court has concluded that Defendants have not shown a substantial case for relief on the merits of their appeal. That conclusion undermines the principal premise on which the fee-stay motion rests. Therefore, the Court will deny the motion.

Independent of that conclusion, judicial economy favors resolving Plaintiffs' fee

request now. This case has been pending since 2019. Both Fed. R. Civ. P. 54(d)(2)(B) and LRCiv 54.2(b)(2) favor prompt resolution of timely fee requests, and the Ninth Circuit has recognized that a district court retains jurisdiction to consider and award attorneys' fees while a merits appeal is pending. *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956–57 (9th Cir. 1983). Plaintiffs are presently prevailing parties by virtue of the March 12, 2026 Order. The only question remaining is the reasonableness of the fees Plaintiffs incurred— a determination this Court is well-positioned to make while the litigation is fresh in mind. Deferral would serve neither efficiency nor fairness.

## IV.  CONCLUSION

Defendants have not met their burden of demonstrating that a stay pending appeal is warranted. Their irreparable harm showing is weak: the harms they identify are compliance costs, administrative burdens, and speculative network disruptions that do not rise to the level of likely, imminent irreparable injury. Because that showing is weak, Defendants must make a strong showing of likelihood of success on the merits. They have not done so. *Medina* does not clearly abrogate *Douglas*; *Loper Bright* does not eliminate the statutory requirement of CMS approval; and the pending SPA does not alter the analysis because it has not been approved and, even if approved, would not itself establish that Defendants' limitations comply with the Medicaid Act. Defendants' disagreement with this factual and legal conclusions does not establish a substantial case for relief. Under the Ninth Circuit's sliding-scale approach, the weakness of both showings reinforces the conclusion that a stay is unwarranted. *See Al Otro Lado*, 952 F.3d at 1010. The remaining *Nken* factors—substantial injury to other parties and the public interest—independently weigh against a stay: Plaintiffs face concrete harm from continued underpayment and delayed enforcement of the Court's injunction, and the public interest lies in enforcing federal law, not preserving a status quo this Court has determined is unlawful.

//

//

//

- 16 -

Accordingly,

**IT IS ORDERED** Defendants' Motion to Stay Order and Judgment (Doc. 170) and Motion To Stay the Deadline to Respond to Plaintiffs' Motion for Attorney's Fees (Doc. 177) are **DENIED**.

**IT IS FURTHER ORDERED** Defendants must file a response to Plaintiffs' Motion for Attorneys' Fees no later than fourteen days from the date this Order is filed in accordance with LRCiv 54.2 and this Court's Scheduling Order. (Doc. 98 at ¶ 14.)

Dated this 12th day of June, 2026.

Jennifer G. Zipps
Chief United States District Judge

- 17 -

**EXHIBIT - 2**

# Exhibit A

Caroline Brown (D.C. Bar No. 438342, *pro hac vice*)
Philip J. Peisch (D.C. (Bar No. 1005423, *pro hac vice*)
Kendra Doty (D.C. Bar No. 1671624, *pro hac vice*)
1225 19th Street NW, Ste 700
Washington, D.C. 20036
202.499.4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance For Community Health Centers; *et al.*<br><br>     *Plaintiffs*,<br><br>v.<br><br>Arizona Health Care Cost Containment System; *et al.*<br><br>     *Defendants*. | Case No. 4:19-cv-00517-JGZ<br><br>DECLARATION IN SUPPORT OF MOTION FOR STAY |

## DECLARATION OF JEFFERY TEGEN

1. My name is Jeffery Tegen. I am the Assistant Director for the Division of Business and Finance at the Arizona Health Care Cost Containment System (AHCCCS). In that capacity I am responsible for all financial activity including payments to providers and actuarial rate setting. I am submitting this declaration in support of the Motion for Stay filed by Defendants in this action.

2. Over 90% of Medicaid full-benefit beneficiaries in Arizona are enrolled in health plans that contract with AHCCCS to provide Medicaid-covered services. AHCCCS currently contracts with eleven health plans. The health plans, in turn, contract with health care

providers, including federally qualified health centers (FQHCs) to deliver services to the plan's Medicaid enrollees.

3. AHCCCS pays its contracted health plans a monthly capitation payment for each enrolled member. By federal regulation, the capitation rate must be actuarially sound. 42 C.F.R. § 438.4. Actuarially sound rates are those that are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract" for the time period and the population covered under the terms of the contract. *Id.*

4. The Centers for Medicare & Medicaid Services (CMS) must approve AHCCCS's contracts with its health plans, and must review and approve the capitation rates as actuarially sound. 42 C.F.R. §§ 438.4, § 438.5, 438.7, 438.806.

5. AHCCCS requires its contracted health plans to cover the services described in the Arizona State Medicaid Plan and in the Arizona approved Section 1115 demonstration project, subject to the limitations described in those documents, state law, or AHCCCS policies and procedures.

6. Consistent with its longstanding interpretation of its State Plan, AHCCCS has never required its health plans to cover FQHC services provided by a dentist, optometrist, podiatrist, or chiropractor beyond the limits applicable to those providers outside of an FQHC. The capitation rates developed by AHCCCS's actuaries, which are reviewed and approved by CMS, are premised on the assumption that FQHCs are subject to the same limits as other providers.

7. AHCCCS's appropriations from the Arizona State Legislature are also premised primarily on capitation rates and enrollment.

8. The increased cost implications of removing limits to physician services for individuals age 21 and older applicable to the general population would be significant and would be driven by three factors:

    a. In addition to other physician services, FQHCs would be able to provide unlimited dental services to adults 21 years and older who can currently only get up to $1000 per year from other AHCCCS providers (and

-2-

another $1000/year for members in the ALTCS Program), therefore the volume of services provided would substantially increase.

    b.  The FQHCs are reimbursed uniquely from other AHCCCS providers using an all-inclusive Prospective Provider Rate (PPS).  This methodology results in higher cost per unit at FQHC vs other providers.  For example, a standard dental visit from the AHCCCS fee schedule is $111.40 vs the average FQHC PPS rate for FFY25 of $364.06 or 327% higher.

    c.  The ability to receive unlimited services from the FQHC for certain benefits may result in AHCCCS members shifting to the FQHC for all services including routine physician or behavioral health services.

9.  Due to the PPS methodology, the shift of any services from non-FQHC providers to the FQHCs will significantly increase the overall cost of the Medicaid program.  In summary, more services provided at FQHCs, at a higher cost, will likely shift from fee schedule providers to the higher PPS rates for other services.  While it's not feasible to estimate an overall fiscal impact at this stage, it is clear that the impact on both the state and federal government would be damaging and substantial.

10. Even if AHCCCS had appropriations to cover FQHC services beyond the limits set forth in the State Plan, adjusting a capitation rate to cover new or additional services is a complex, resource intensive  process that will require AHCCCS to engage with its actuaries and with CMS.  This can be a multi-month process.

11. Since the decision in this case was announced, AHCCCS has received questions from health plans as to whether they must pay FQHCs for dentist, optometrist, podiatrist and chiropractor services beyond the limits applicable to other providers and, if so, how far back that obligation extends.

12. To clarify longstanding policy that the same limits for physician services apply to all providers, including FQHCs, on March 31, 2026, AHCCCS submitted a State Plan Amendment to CMS which, once approved, will be effective January 1, 2026.   CMS

-3-

regulations provide that the effective date for a plan amendment may be as early as the first day of the quarter in which it is submitted.  42 C.F.R. § 430.20.

13. If the federal district court decision is not stayed, AHCCCS's health plans will be put in the position of paying for services that were not taken into account in setting of their rates.

14.  In addition, if the decision is not stayed, for services furnished after the date of the Court's order that are not covered by the health plans, AHCCCS may be required to make fee-for-service payments to FQHCs beyond the limitations that apply to the same services furnished by other providers.

15. If the decision is overturned on appeal or if the State Plan Amendment is approved, the health plans would then be entitled to recoup any payments paid in excess of the State Plan limits.  AHCCCS would also need to recoup any fee-for-service payments paid in excess of the State plan limits.  Any such recoupment would be incredibly burdensome for both AHCCCS and the FQHCs; it would require a substantial amount of agency administrative and operational resources to identify and collect each recoupment due, and such a time intensive process could take weeks or months to fully resolve.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this __7_ day of April, 2026.


_____/s/Jeffery Tegen_____

Jeffery Tegen

-4-

**EXHIBIT - 3**

Case: 26-2024, 06/29/2026, DktEntry: 11.1, Page 53 of 80

# Exhibit B

Caroline Brown (D.C. Bar No. 438342, *pro hac vice*)
Philip J. Peisch (D.C. (Bar No. 1005423, *pro hac vice*)
Kendra Doty (D.C. Bar No. 1671624, *pro hac vice*)
1225 19th Street NW, Ste 700
Washington, D.C. 20036
202.499.4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Alliance For Community Health Centers; *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> Arizona Health Care Cost Containment System; *et al.* <br><br> *Defendants*. | Case No. 4:19-cv-00517-JGZ <br><br> DECLARATION IN SUPPORT OF MOTION FOR STAY |

## DECLARATION OF ALISA RANDALL

1.  My name is Alisa Randall.  I am the Assistant Deputy Director for Managed Care and Clinical Operations at the Arizona Health Care Cost Containment System (AHCCCS).  In that capacity, I am responsible for the operational and clinical oversight of AHCCCS' contracted managed care organizations, including but not limited to contracts, policy, and network adequacy.  I am submitting this declaration in support of the Motion for Stay filed by Defendants in this action.

2.  Over 90% of Medicaid full-benefit beneficiaries in Arizona are enrolled in health plans that contract with AHCCCS to provide Medicaid-covered services.  AHCCCS currently contracts with eleven health plans.  The health plans, in turn, contract with health care

providers, including federally qualified health centers (FQHCs) to deliver services to the plan's Medicaid enrollees.

3. AHCCCS requires its contracted health plans to cover the services described in the Arizona State Medicaid Plan and in the Arizona approved Section 1115 demonstration project, subject to the limitations described in those documents, state law, or AHCCCS policies and procedures.

4. The Centers for Medicare & Medicaid Services (CMS) must approve AHCCCS's contracts with its health plans.

5. Consistent with its longstanding interpretation of its State Plan, AHCCCS has never required its health plans to cover FQHC services provided by a dentist, optometrist, podiatrist, or chiropractor beyond the limits applicable to those providers outside of an FQHC.

6. The requested stay is necessary to prevent significant disruption to the Arizona Medicaid program and its stakeholders.  Without the stay, substantial operational changes would be necessary requiring considerable expenditure of time, effort, and financial resources.

7. Policy manuals, operational protocols, and stakeholder communications would require immediate updates to ensure compliance and proper guidance for health plans and providers. Such adjustments are complex, requiring coordination across multiple departments and stakeholders, and may be subject to regulatory review and approval, along with advance notification.

8. Modifications requiring health plans to reimburse FQHCs for services beyond the limits applicable to other providers may potentially cause considerable provider abrasion in our already fragile network.  Changes in policy are likely to  disrupt established relationships with providers and create uncertainty in the provider network.  These changes will likely draw members away from long-standing providers, shifting them toward FQHC providers which, consistent with the federal district court decision, will be permitted to render  a broader scope of service coverage (and potentially at  higher  reimbursement rates)  than  non-FQHC

providers.  This disparity in scope and reimbursement could threaten the sustainability of smaller providers, putting the integrity and diversity of the provider network at risk.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this _7_ day of April, 2026.

_____

Alisa Randall

**EXHIBIT - 4**

Caroline M. Brown, D.C. Bar No. 438342 (*pro hac vice*)
Philip J. Peisch, D.C. Bar No. 1005423 (*pro hac vice*)
Kendra Doty, D.C. Bar No. 1671624 (*pro hac vice*)
1225 19th Street NW, Ste 700
Washington, D.C. 20036
(202)499-4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Arizona Alliance for Community
Health Centers, *et al.*,

                              *Plaintiffs*,

v.

Arizona Health Care Cost Containment
System, *et al.*,

                              *Defendants*.

Case No. 4:19-cv-00517-JGZ

DEFENDANTS' MOTION TO STAY
ORDER AND JUDGMENT

For the reasons explained in Defendants' accompanying memorandum, Defendants respectfully move to stay the Court's March 12, 2026 order and judgment in this matter pending appeal.

Respectfully submitted,

April 8, 2026                    /s/ Caroline M. Brown
                                 Caroline M. Brown, D.C. Bar No. 438342
                                 (*pro hac vice*)

1

Philip J. Peisch, D.C. Bar No. 1005423
(*pro hac vice*)
Kendra Doty, D.C. Bar No. 1671624
(*pro hac vice*)
1225 19th Street NW
Suite 700
Washington, D.C. 20036
(202)499-4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Caroline M. Brown, hereby certify that a copy of the foregoing was sent by ECF to all counsel of record.

Dated:  April 8, 2026

/s/ Caroline M. Brown
Caroline M. Brown

3

# EXHIBIT - 5

Caroline M. Brown, D.C. Bar No. 438342 (*pro hac vice*)
Philip J. Peisch, D.C. Bar No. 1005423 (*pro hac vice*)
Kendra Doty, D.C. Bar No. 1671624 (*pro hac vice*)
1225 19th Street NW, Ste 700
Washington, D.C. 20036
(202)499-4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Arizona Alliance for Community
Health Centers, *et al.*,

                    *Plaintiffs*,

v.

Arizona Health Care Cost Containment
System, *et al.*,

                    *Defendants*.

Case No. 4:19-cv-00517-JGZ

DEFENDANTS' MEMORANDUM
IN SUPPORT OF ITS MOTION TO
STAY ORDER AND JUDGMENT

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

ARGUMENT ........................................................................................................... 5

   I.   AHCCCS Is Likely to Succeed on the Merits of the Appeal. ........................... 5

   II.  AHCCCS Will Be Irreparably Harmed Absent a Stay. ...................................... 9

   III. A Stay Will Not Injure Plaintiffs. .................................................................... 11

   IV. The Public Interest Strongly Favors a Stay to Avoid Destabilizing

       Arizona's Medicaid Program................................................................................ 11

CONCLUSION ...................................................................................................... 12

Certificate of Service .............................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Crouch*,
 169 F.4th 474 (4th Cir. 2026) ........................................................................6

*California Association of Rural Health Clinics v. Douglas*,
 738 F.3d 1007 (9th Cir. 2013) ......................................................................6

*Concourse Rehabilitation and Nursing Center, Inc. v. DeBuono*,
 179 F.3d 38 (2d Cir. 1999) ...........................................................................8

*Doe v. Mayes*,
 No. CV-24-02259-PHX-MTL, 2024 WL 5434237 (D. Ariz. Nov. 27, 2024)
 (unpublished) ................................................................................................9

*Family Health Centers of Southwest Florida, Inc. v. Secretary,*
*Florida Agency for Health Care Administration*,
 No. 2:21-CV-278-SPC-NPM, 2023 WL 5153484 (M.D. Fla. Aug. 10, 2023)
 (unpublished) ................................................................................................9

*Hilton v. Braunskill*,
 481 U.S. 770 (1987)........................................................................................5

*Indiana Protection and Advocacy Services Commission v. Indiana*
*Family and Social Services Administration*,
 149 F.4th 917 (7th Cir. 2025) .......................................................................7

*Lair v. Bullock*,
 697 F.3d 1200 (9th Cir. 2012) ......................................................................9

*Lancaster by & through Green v. Cartmell*,
 162 F.4th 1063 (10th Cir. 2025) ...................................................................7

*Leibel v. City of Buckeye*,
 382 F. Supp. 3d 909 (D. Ariz. 2019) ............................................................9

*Leiva-Perez v. Holder*,
 640 F.3d 962 (9th Cir. 2011) ................................................................2, 5, 9

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)..............................................................................................7, 8

*Medina v. Planned Parenthood South Atlantic*,
606 U.S. 357 (2025)...............................................................................................6, 7

*Toomey v. Arizona*,
No. CV-19-0035-TUC-RM (LAB), 2021 WL 4915370 (D. Ariz. Oct. 21, 2021)
(unpublished) .........................................................................................................12

**Statutes**

42 U.S.C. § 1396a...............................................................................................6, 7, 8

**Rules**

Fed. R. Civ. P. 25 ......................................................................................................1

Fed. R. Civ. P. 62 ...................................................................................................1, 5

**Regulations**

42 C.F.R. § 430.20....................................................................................................5

42 C.F.R. § 438.4......................................................................................................3

42 C.F.R. § 438.5......................................................................................................3

42 C.F.R. § 438.7......................................................................................................3

42 C.F.R. § 438.806..................................................................................................3

iii

## INTRODUCTION

On March 31st, Defendants Arizona Health Care Cost Containment System and Interim Director Roberta Harrison, in her official capacity,[1] (collectively, "AHCCCS") filed a notice of appeal from the court's March 12th judgment in this matter.  Also on March 31st, Defendants filed a State Plan Amendment ("SPA") with the Centers for Medicare & Medicaid Services ("CMS") expressly incorporating the service limits applicable to other providers to federally qualified health centers ("FQHCs").  If approved, the plan amendment will be effective retroactive to January 1, 2026.

In light of these two actions, and pursuant to Federal Rule of Civil Procedure 62, Defendants respectfully request that the Court stay its judgment in this matter pending appeal.  A stay would maintain the status quo and is necessary to avoid substantial financial and operational disruption and uncertainty in Arizona's Medicaid program while the case is on appeal and CMS reviews the pending plan amendment.

If the judgment takes effect immediately, the health plans with which AHCCCS contracts will become responsible for paying for federally qualified health center ("FQHC") services beyond the limits contemplated in their contracts.  The cost of the additional benefits were not included in establishing the capitation rates by

---

[1] Roberta Harrison has succeeded Carmen Heredia as Director of AHCCCS and is therefore automatically substituted as a party in this case per Federal Rule of Civil Procedure 25(d).

which the health plans are paid.  Removing these service limits could require contractual changes, rate changes, system modifications, and updates to provider and beneficiary manuals, all of which require substantial human and capital resources that could take many months to put in place, not to mention additional appropriations from the Arizona State Legislature to fund them.  All of this work would need to be undone—and any increased payments to FQHCs would need to be recouped—if Defendants prevail on appeal or if CMS approves Defendants' pending plan amendment.

Moreover, Defendants have substantial concerns that implementing the Court's judgment would disrupt the health care provider landscape in Arizona.  To avoid otherwise applicable service limits, Medicaid beneficiaries would have an incentive to access care through FQHCs rather than through other providers.  This could cause a shift in utilization away from non-FQHC providers and could cause those providers to limit their participation in Medicaid, which in turn would adversely affect access to care.  Moreover, a shift in utilization towards FQHCs and away from other providers would substantially increase the costs to AHCCCS and its health plans, because FQHCs are paid substantially more than other providers.

A stay would be "less coercive and less disruptive" than implementing the court's injunction.  *See Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011).  It would preserve the status quo and protect AHCCCS and other stakeholders from expending extensive resources to implement the order and then potentially revert back depending on the outcome of the appeal and whether CMS approves the SPA.

2

**BACKGROUND**

On March 12, 2026, this Court issued an order granting summary judgment to Plaintiffs on the ground that there was not evidence that CMS approved of Arizona's interpretation of its State Medicaid Plan to apply limits to FQHCs that apply to other providers of dental, optometry, podiatry, and chiropractic services. *See* ECF 164 (hereafter, "March 12 Order"). The Court accordingly enjoined AHCCCS "from enforcing or applying limitations on mandatory FQHC dental, optometry, and podiatry services that were not approved by CMS, as required by the Medicaid Act." ECF 164 at 11.

Since the March 12 Order, AHCCCS has fielded questions from stakeholders regarding the effects of the order, including inquiries from Arizona's health plans regarding their obligations to pay without limitation for services FQHCs provide to Medicaid beneficiaries. *See* Ex. A ¶ 11.

AHCCCS contracts with eleven health plans to provide Medicaid-covered services to the overwhelming majority of Medicaid beneficiaries throughout the State, and the health plans in turn contract with providers, including FQHCs, to deliver services to the plan's enrollees. Ex. B ¶ 2. AHCCCS pays its contracted health plans a monthly capitation payment for each enrolled member, which is developed by actuaries and approved by CMS as actuarially sound—that is, the rates are "projected to provide for all reasonable, appropriate, and attainable costs that are required under the terms of the contract" for the time period and the population covered under the terms of the contract. *See* 42 C.F.R. §§ 438.4, 438.5, 438.7, 438.806.

3

Consistent with its longstanding interpretation of its State Plan, AHCCCS has never required its health plans to cover FQHC services provided by a dentist, optometrist, podiatrist, or chiropractor beyond the limits applicable to those providers outside of an FQHC.  Ex. A ¶ 6.  Thus, the capitation rates AHCCCS pays to the health plans are premised on the assumption that FQHCs are subject to the same limits as other providers.  *See id.*

Changing capitation rates to cover new or additional services can be a complex, multi-month-long process that involves working with the actuaries and obtaining CMS approval.  Ex. A ¶ 10.  In addition, AHCCCS's appropriations from the Arizona State Legislature are premised on current capitation rates and enrollment and would need to be adjusted for any rate change to avoid upending AHCCCS's budget.  Ex. A ¶¶ 7, 10.

In light of the March 12 Order, contracted health plans have asked AHCCCS whether they must pay FQHCs for dental, optometry, podiatry, and chiropractic services beyond the limits applicable to other providers, and if so, how far back that obligation extends.  *See* Ex. A ¶ 11.

In addition, in light of the March 12 Order, for enrollees and services not covered by the health plans, AHCCCS must make fee-for-service payments to FQHCs for dental, optometry, and podiatry services beyond the limitations that apply to the same services furnished by other providers while the injunction is operative.  *See* Ex. A ¶ 14.

4

On March 31, 2026, Defendants timely appealed the March 12 Order to the Ninth Circuit. *See* ECF 168.

Also on March 31, 2026, AHCCCS filed with CMS a SPA to more clearly impose on FQHCs the same limitations that apply to other providers of services, including dentists, podiatrists, and optometrists. *See* Ex. A ¶ 12. In accordance with CMS regulations, if approved, the SPA will become effective on January 1, 2026. 42 C.F.R. § 430.20.

## ARGUMENT

Defendants seek a stay pursuant to Federal Rule of Civil Procedure 62(d). In evaluating a request for a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). In this case, all four factors weigh in favor of granting a stay pending appeal.

### I.  AHCCCS Is Likely to Succeed on the Merits of the Appeal.

"[T]o justify a stay, [a movant] need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez*, 640 F.3d at 966. Rather, it is sufficient to demonstrate that the movant will raise on appeal "a substantial case for relief on the merits." *Id.* at 968.

5

In this case, Defendants intend to raise on appeal a substantial case for relief on the merits with respect to three issues.

First, as noted in Defendants' notice of supplemental authority filed on July 18, 2025, after summary judgment briefing had concluded, *see* ECF 158, the Supreme Court's decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025), clarified that the test for determining whether a statutory provision creates an "unambiguously conferred right" that can be enforced under Section 1983 is a "stringent" and "demanding" one that is rarely met by any statute, and is especially rare for spending clause statutes such as Medicaid. 606 U.S. at 368–69, 376 (cleaned up); *see also id.* at 375 (referring to test as a "significant hurdle that will be cleared only in the atypical case" (internal quotation marks omitted)). Defendants believe that 42 U.S.C. § 1396a(bb)—which provides only that "the State plan shall provide for payment" for FQHC services—does not meet this standard, and that the Ninth Circuit's contrary conclusion in *California Association of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013), has been effectively abrogated by *Medina.* Certainly nothing in Section 1396a(bb) suggests that the same limits that the State applies to other service providers do not also apply to FQHCs, much less that the FQHCs have an enforceable right to provide such services without limit. Given this intervening authority, there is a substantial case on for relief on the merits on the ground that Plaintiffs cannot proceed in federal court to begin with. *See Anderson v. Crouch*, 169 F.4th 474, 494–97 (4th Cir. 2026) (holding, post-*Medina*, no privately enforceable right under Medicaid provisions in Section 1396a(a)(10)(A), (B));

6

*Lancaster by & through Green v. Cartmell*, 162 F.4th 1063, 1068–70 (10th Cir. 2025) (holding, post-*Medina*, no privately enforceable right under Medicaid provision at Section 1396a(a)(8)); *Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*, 149 F.4th 917, 926–27 (7th Cir. 2025) (noting that *Medina* "may well have undermined" the availability of enforcing Medicaid provisions that the Seventh Circuit had previously concluded were "legally viable").

Second, although the Ninth Circuit's instruction on remand was to develop the record and determine whether AHCCCS's limitations on dental, optometry, and podiatry services "are entitled to *Chevron* deference," as this Court noted in its March 12 Order, the Supreme Court later overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), explaining that "courts must exercise independent judgment in determining the meaning of statutory provisions," *id.* at 394; *see also* ECF 164 at 7.  As Defendants argued in briefing summary judgment, in light of *Loper Bright*, the only question in this case is whether Arizona's interpretation of its state plan—*i.e.*, applying the same limits to FQHC services as it does when those services are provided outside of the FQHC setting—violates the FQHC reimbursement provisions set forth in Section 1396(bb), and for the reasons explained in that briefing, Defendants continue to maintain that it does not.  *See* ECF 145 at 5–15.

Although the March 12 Order appears to agree with the effect of *Loper Bright* on the remaining question presented in this case, the Court continued to address the specific issue the Ninth Circuit identified for remand—namely, whether CMS understood and approved of Arizona's application of limits to optometry, dental, and

7

podiatry services provided in FQHCs that apply to the same services provided in other settings. *See* ECF 164 at 8–10. While understandable, the Court's focus on CMS approval obscured the fundamental issue of whether AHCCCS's interpretation complied with the statute, notwithstanding CMS's understanding or interpretation of the limitations and how they were applied to FQHCs. *See Concourse Rehab. & Nursing Ctr., Inc. v. DeBuono*, 179 F.3d 38, 47 (2d Cir. 1999) (explaining that unless there is a federal instruction to the contrary, "a federal court is bound to accept that a State Medicaid plan means what the State says it means"). To that end, Defendants' appeal presents "a substantial case for relief on the merits" by asking the Ninth Circuit to itself interpret and apply the statutory requirements as required by *Loper Bright*. *See* ECF 145 at 6–15 (outlining Defendants' position as to why the limitations applied to FQHCs complies with Section 1396a(bb)); ECF 154 at 3–8 (same).

Third, the Court concluded that Arizona was not acting in accordance with its approved state plan or the Medicaid Act when it applied to FQHCs limitations the state plan expressly applies to other providers. *See* ECF 164 at 9–10. Respectfully, Defendants disagree with this conclusion as a factual matter and a legal matter for the reasons stated in its summary judgment briefing. *See* ECF 145 at 12–14; ECF 154 at 4–5, 7–8. Although it is impossible to predict whether the Ninth Circuit will agree with Defendants' position, this issue at least presents a substantial case for relief on the merits.

8

**II.    AHCCCS Will Be Irreparably Harmed Absent a Stay.**

To show irreparable injury, a movant "must show 'that there is a probability of irreparable injury if the stay is not granted.'" *Leibel v. City of Buckeye*, 382 F. Supp. 3d 909, 917 (D. Ariz. 2019) (quoting *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012)). That is, this factor "requires there be evidence that irreparable harm 'is the more probable or likely outcome' and the harm is truly irreparable." *Doe v. Mayes*, No. CV-24-02259-PHX-MTL, 2024 WL 5434237, at *1 (D. Ariz. Nov. 27, 2024) (unpublished) (citing *Leiva-Perez*, 640 F.3d at 968). In a similar case, one court has found that the expenditure of public administrative resources to change the status quo to comply with the terms of an order constituted a potential harm that could not be repaired if the order were reversed on appeal. *See Fam. Health Ctrs. of Sw. Fla., Inc. v. Sec'y, Fla. Agency for Health Care Admin.*, No. 2:21-CV-278-SPC-NPM, 2023 WL 5153484, at *1–2 (M.D. Fla. Aug. 10, 2023) (unpublished).

In this case, AHCCCS will suffer irreparable harm absent a stay due to the order's immediate ramifications of eliminating the limitations AHCCCS has long applied to coverage of optometry, dental, chiropractic, and podiatry services provided by FQHCs. As explained in the declaration of Jeffrey Tegen, the March 12 Order has already raised critical and expansive questions of the Order's effect on health plans' obligations to cover and pay for services provided by FQHCs, including optometry, dental, chiropractic, and podiatry services. *See* Ex. A ¶ 11. Given that existing appropriations and already-established capitation rates for the present contract year were premised on AHCCCS's long-time application of the same limitations on

9

FQHC's provision of optometry, dental, podiatry, and chiropractic services that apply to other providers' provision of such services, the Order's injunction on the application of such limits will immediately require AHCCCS to spend agency resources developing guidance for the health plans on the implications of the Order, and it may require AHCCCS to consider spending additional human and financial resources to seek additional appropriations and amend the capitation rates. In addition, to the extent capitation rates are being developed for the next contract year, AHCCCS, its actuaries, and the health plans must consider and take into account the Order's effect to ensure that the new capitation rates are actuarially sound. If the March 12 Order is reversed on appeal or if CMS approves the SPA to clarify limitations for services provided at FQHCs, all of those efforts will be for naught and will need to be undone, which will require AHCCCS to spend further resources.

Additionally, AHCCCS will suffer irreparable harm absent a stay if the March 12 Order is reversed on appeal or if CMS approves AHCCCS's SPA to clarify the limitations on services provided by FQHCs because AHCCCS will then need to spend agency resources seeking recoupments of any fee-for-service payments made to FQHCs in excess of those limits that were paid after and as a result of the March 12 order. Such an endeavor would divert critical agency resources such as staff time and funding, which could be entirely avoided if the March 12 Order were stayed pending appeal.

10

**III.    A Stay Will Not Injure Plaintiffs.**

Plaintiffs have been successfully operating their businesses for many years under the service limitations AHCCCS has applied to their reimbursement. A relatively brief delay in enforcing the March 12 Order will result in Plaintiffs receiving less reimbursement, but there is no evidence that the funding shortfall will detrimentally injure any of the Plaintiffs.

Moreover, if CMS approves the pending SPA to clarify and reinstate those limitations, the new limitations will be deemed to have taken effect on January 1, 2026. Therefore, the clarified limitations would apply to any claims for payment for services the FQHCs have rendered since the March 12 Order was issued and through the duration of the appeal. In other words, assuming CMS approves AHCCCS's SPA, a stay will have no effect on the Plaintiffs other than to prevent Plaintiffs from having to repay AHCCCS for any payments made in excess of the limitations once the state plan is approved.

**IV.    The Public Interest Strongly Favors a Stay to Avoid Destabilizing Arizona's Medicaid Provider Network.**

Finally, the public interest favors entering a stay of the March 12 Order. Like AHCCCS, Arizona's health plans will have to expend administrative resources to implement and then potentially unwind the March 12 Order if the Order is reversed on appeal or if CMS approves the SPA. Additionally, by removing the service limitations for certain services furnished at FQHCs, the March 12 Order threatens to divert patients from other network providers of optometry, podiatry, chiropractic, and

11

dental services to FQHCs, which could destabilize the existing ecosystem of providers of these services and prompt providers to leave or limit their participation in the Medicaid program, thereby potentially reducing the availability of services for Medicaid beneficiaries.  By preserving the status quo, a stay of the March 12 Order will avoid these immediate consequences, and the stay will not harm the public interest beyond merely delaying additional reimbursement for FQHCs.

***

In sum, the balance of interests favors staying this Court's order and judgment pending the outcome of Defendants' appeal to avoid AHCCCS having to implement and then unwind massive changes to its Medicaid program if either the Ninth Circuit reverses the judgment or CMS approves the pending state plan amendment.  *See Toomey v. Arizona*, No. CV-19-0035-TUC-RM (LAB), 2021 WL 4915370, at *3 (D. Ariz. Oct. 21, 2021) (unpublished) (describing the stay factors as a "sliding scale").

**CONCLUSION**

For the foregoing reasons, Defendants ask that the Court stay its order and judgment pending the outcome of Defendants' appeal.

12

Respectfully submitted,

April 8, 2026

/s/ Caroline M. Brown
Caroline M. Brown, D.C. Bar No. 438342
(*pro hac vice*)
Philip J. Peisch, D.C. Bar No. 1005423
(*pro hac vice*)
Kendra Doty, D.C. Bar No. 1671624
(*pro hac vice*)
1225 19th Street NW
Suite 700
Washington, D.C. 20036
(202)499-4261
cbrown@brownandpeisch.com
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com


*Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

I, Caroline M. Brown, hereby certify that a copy of the foregoing was sent by ECF to all counsel of record.

Dated: April 8, 2026

/s/ Caroline M. Brown
Caroline M. Brown

14