**No. 26-2024**

# United States Court of Appeals for the Ninth Circuit

ARIZONA ALLIANCE FOR COMMUNITY HEALTH CENTERS;
CANYONLANDS HEALTHCARE; CHIRICAHUA COMMUNITY HEALTH
CENTERS; DESERT SENITA COMMUNITY HEALTH CENTER;
MARIPOSA COMMUNITY HEALTH CENTER; MARANA HEALTH
CENTER; MOUNTAIN PARK HEALTH CENTER; NATIVE HEALTH;
NORTH COUNTRY HEALTHCARE; SUN LIFE FAMILY HEALTH
CENTER; SUNSET COMMUNITY HEALTH CENTER; UNITED
COMMUNITY HEALTH CENTER - MARIA AUXILIADORA, INC.,

*Plaintiffs-Appellees,*

– v. –

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM; ROBERTA
HARRISON, replacing Carmen Denise Heredia pursuant to FRAP 43(c)(2),

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA IN NO. 4:19-CV-00517-JGZ,
HONORABLE JENNIFER G. ZIPPS, CHIEF DISTRICT JUDGE

**APPELLANTS' REPLY IN SUPPORT OF THEIR
MOTION TO STAY DISTRICT COURT ORDER AND
JUDGMENT PENDING APPEAL**

CAROLINE M. BROWN
KENDRA DOTY
BROWN & PEISCH PLLC
*Attorneys for Defendants-Appellants*
1220 19th Street, NW, Suite 210
Washington, DC 20036
(202) 499-4258

**INTRODUCTION**

Plaintiffs do not dispute that a stay of the district court's March 12, 2026 order enjoining AHCCCS from applying its longstanding limits to dental, podiatry, optometry, and chiropractic services furnished at FQHCs would be "less coercive and less disruptive" than implementing the injunction. *See Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). By preserving the status quo, a stay will minimize the immediate ramifications and substantial harms Appellants will have to endure. Without a stay, AHCCCS will be required to immediately overhaul several fundamental aspects of its Medicaid program, which will substantially affect the underlying service delivery system and the longstanding foundation and design of the provider network developed by health plans, require major programming and system changes, and potentially destabilize existing provider networks. If this Court then reverses or vacates the district court's order, or if the Centers for Medicare & Medicaid Services (CMS) approves AHCCCS's pending state plan amendment to clarify the limitations it applies to FQHC services, AHCCCS will need to again overhaul its Medicaid program to return the system to the state in which it existed prior to the district court's March 12, 2026 order.

AHCCCS has raised a substantial question on appeal as to whether the dispute between the parties—which involves AHCCCS's compliance with a provision of the Medicaid statute—even belongs in federal court in the first place, given the Supreme

1

Court's recent clarification and confirmation that the "'typical remedy for state noncompliance' with a federal grant's conditions," including Medicaid, is not by court action in a suit by private parties but by an "'action by the Federal Government to terminate funds to the State.'" *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 373 (2025). Given this context, the balance of factors favors entering a stay pending resolution of the instant appeal.

## ARGUMENT

### I. AHCCCS Presents a Substantial Question for Reversal.

Plaintiffs do not dispute that a stay is warranted if the movant raises "a substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 966–68 (9th Cir. 2011). Under that standard, AHCCCS does not need to show "a likelihood of reversal." Dkt. 14.1 at 1. Rather, a stay may be entered where the appeal involves "serious legal questions." *Leiva-Perez*, 640 F.3d at 966–68.

Here, that standard is clearly satisfied. In light of the Supreme Court's decision in *Medina*, it is an open question whether Plaintiffs have a right conferred by 42 U.S.C. § 1396a(bb) that is enforceable under 42 U.S.C. § 1983 to payment for services beyond the limits that the State has set forth in its state plan applicable to other providers. *See* Dkt. 11.1 at 8–15. That there exists circuit precedent finding such a right does not preclude the merits panel or the en banc court from revisiting that precedent in light of *Medina*. To the contrary, the Court is obligated to consider

2

whether its prior decision is still good law. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

As explained in both the motion to stay and Appellant's opening brief on the merits, it is clear that *Medina* effectively abrogated both *California Association of Rural Health Clinics v. Douglas*, 738 F.3d 1007 (9th Cir. 2013), and the Court's prior decision in this case, *Ariz. All. for Comm. Health Ctrs. v. AHCCCS*, 47 F.4th 992 (9th Cir. 2022). *See* Dkt. 11.1 at 8–15; Dkt. 6.1 at 12–25. Like the district court, Plaintiffs argue that *Douglas* and *Arizona Alliance* are not clearly irreconcilable with *Medina* because *Medina* did not expressly mention 42 U.S.C. § 1396a(bb), FQHC reimbursement, or the *Douglas* decision. *See* Dkt. 14.1 at 10. But such express repudiation is not required. *See Miller*, 335 F.3d at 899–900.

Plaintiffs' attempt to show that *Douglas* can "be read in harmony" with *Medina* ignores the actual analysis set forth in both cases. *See* Dkt. 14.1 at 11. *Douglas*—while citing *Gonzaga University v. Doe*, 536 U.S. 273 (2002)—expressly, clearly, and repeatedly relied on the *Blessing v. Freestone*, 520 U.S. 329 (1997), factors to reach its ultimate holding, just as the Fourth Circuit did in the *Medina* decision that was overturned. *Douglas*, 738 F.3d at 1011–12, 1013. *Medina* instructs that such reliance on *Blessing* is misguided and inconsistent with its clarified standard. *Medina*, 606 U.S. at 374–76. This incompatibility alone presents a "serious legal question" sufficient to justify a stay.

3

Plaintiffs' argument that 42 U.S.C. § 1396a(bb) exists in a separate subsection than the provision at issue in *Medina* ignores Section 1396a(a)(15), which requires a state plan to "provide for payment" for FQHC services "in accordance with subsection (bb)." That is, the FQHC payment provision, just like the freedom-of-choice provision, is one of many state plan requirements listed in Section 1396a(a) and, accordingly, is subject to enforcement by the federal government only if the State fails to "comply substantially" with its provisions, which the Supreme Court has concluded is a test of "aggregate" compliance unlikely to support a privately enforceable right. *Medina*, 606 U.S. at 379.

The other circuit court cases on which Plaintiffs rely as authority for finding an unambiguous right in 42 U.S.C. § 1396a(bb) and the continued relevance of *Douglas* all predate *Medina* and are similarly subject to scrutiny using *Medina*'s clarified test for determining whether a statute confers a right enforceable through 42 U.S.C. § 1983. *See* Dkt. 14.1 at 10–11, n. 5. Moreover, *all* of the other cases finding an "unambiguous right" involve whether a State's calculation of an FQHC's payment rate is compliant with the formula set forth in the statute; *no* court (other than this one) has found that FQHCs have an "unambiguous right" to payment for services beyond what a State has otherwise included in its state plan. To find such a right, *Douglas* looked to no less than four different statutory provisions, ending with a definition section. That multi-step analysis was not adopted by any of the

4

other cases that Plaintiffs claim supports them, and is inconsistent with this Court's caution that an enforceable right is generally not found in a statutory provision that "merely defines" a term. *See Abcarian v. Levine*, 972 F.3d 1019, 1026–27 (9th Cir. 2020); *see also Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1197 (8th Cir. 2013) ("[F]inding an enforceable right solely within a purely definitional section is antithetical to requiring unambiguous congressional intent.").

Even if one accepts that the statutory instruction that "the State plan shall provide for payment" using a particular payment methodology puts a State on notice that it is subject to suit if its payment methodology is not consistent with the statutory provisions, that is a far cry from finding that the statute unambiguously notifies a State that it is subject to a suit if it applies the same limits to FQHC services that it applies to all other Medicaid providers. *See* Dkt. 11.1 at 11; Dkt. 6.1 at 18–25. Nothing in the statute precludes a State from limiting FQHC services or requires that the State treat FQHCs differently than other providers *other than* mandating the per-visit payment methodology, which is not at issue in this case.

## II. The Irreparable Harm AHCCCS Will Suffer Warrants a Stay Even Though Plaintiffs Will Receive Less Reimbursement in the Short Term.

Critically, the district court's injunction will change the status quo. If a stay is not entered, Plaintiffs do not dispute that AHCCCS will have to undertake substantial administrative efforts at considerable cost to change the status quo to

overhaul its reimbursement systems, state Medicaid plan, and managed care contracts to comply with the district court's order. *See* Dkt. 14.1 at 6–9; Dkt. 11.1, Exs. 2 and 3. In contrast, if a stay is entered, Plaintiffs will continue to receive the same level of Medicaid reimbursement that they have previously, because AHCCCS and its health plans will continue to apply the longstanding limits on dental, optometry, podiatry, and chiropractic services provided by FQHCs while the appeal proceeds. *See* Dkt. 14.1 at 15–16.[1]

Although both parties face potential harms if a stay is or is not granted, only AHCCCS's injury is irreparable. The harm Plaintiffs will experience is neither irreparable or substantial: If a stay is entered and the district court's decision is ultimately upheld on appeal, AHCCCS will make additional payments to Plaintiffs to ensure that all payments made after the March 12, 2026 order was entered comply with that order; in other words, Plaintiffs will be made entirely whole. *See* Dkt. 14.1 at 14–16; *see also Doe v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) ("[M]onetary injury is not normally considered irreparable." (internal quotation marks omitted)).

Plaintiffs unjustifiably minimize the injury AHCCCS will suffer absent a stay by claiming that all AHCCCS will need to do is "utilize some resources to comply

---

[1] Throughout this case, this Court, the district court, and the parties have agreed that States may place limits on services they cover, including services furnished at FQHCs. *See Ariz. All.*, 47 F.4th at 1101; ECF 145 at 10–11 (citing record examples).

with the district court's order." Dkt. 14.1 at 7. But Plaintiffs do not argue that AHCCCS's concerns are overstated or inaccurate. Moreover, Plaintiffs do not contest that another court in a similar case involving FQHC reimbursement found that investments similar to those AHCCCS will have to make are irreparable injuries that warrant a stay pending appeal. *Family Health Ctrs. of Sw. Fla., Inc. v. Sec'y, Fla. Agency for Health Care Admin.*, No. 2:21-cv-278-SPC-NPM, 2023 U.S. Dist. LEXIS 139844 (M.D. Fla. Aug. 10, 2023) (unpublished). There, as here, a stay preserved the status quo, which prejudiced the plaintiff FQHC, but it also protected the state Medicaid agency from expending considerable, irrecoverable resources to make additional payments to the FQHC, work with CMS to implement changes to its state plan, and, in this case, develop and implement changes to the capitation rates paid to the State's contracted health plans. *See id.* at *4–5. If a stay is not entered and AHCCCS prevails on appeal or CMS approves the pending state plan amendment, AHCCCS will need to expend further human, administrative, and capital resources to undo all of that work and put the system back to where it was before the district court issued its March 12 order. *See* Dkt. 11.1, Exs. 2 and 3. Relatedly, although AHCCCS has tools to recoup from FQHCs payments made in excess of the longstanding limits should the district court's order be reversed or vacated, such recoupment will be cumbersome and administratively and financially expensive, which could be entirely avoided by a stay. *See* Dkt. 11.1, Ex. 2 at ¶ 15.

7

These injuries are not "vague" or "speculative." *See* Dkt. 14.1 at 8. AHCCCS presented with its motion (both before this Court and the district court) declarations of agency staff proffering evidence that these are the harms that AHCCCS is presently confronting and will continue to face unless a stay is entered. *See* Dkt. 11.1 at 19, Dkt. 11.1, Exs. 2 and 3. That the district court or Plaintiffs want different evidence does not render the evidence presented "speculative" or insufficient to warrant entering a stay.

Although the district court and Plaintiffs categorize these concerns as the "cost of complying" with the district court's order, that is a truism hardly unique to this case. Compliance costs are always the issue when a party seeks to stay an injunction that disrupts the status quo while appealing the merits of that injunction. *See* Dkt. 14.1 at 7–8; Dkt. 11.1, Ex. 1 at 4. The question thus is not whether these are the "cost of compliance," but whether AHCCCS must bear those compliance costs while the appeal is pending, or whether the irreparable nature of those costs justifies staying the injunction while the appellate court considers the appeal.

## III. The Public Interest Factor Favors a Stay.

To the extent the public interest factor "runs with public health," Dkt. 14.1 at 2, that factor favors a stay because the stay would preserve the status quo and current level of access to health care services for all Medicaid beneficiaries in Arizona, not only those who receive services at Plaintiffs' facilities.

8

A stay will preserve the existing ecosystem of Medicaid providers, including both FQHC and non-FQHC providers. Implementing the district court's order only risks destabilizing that ecosystem. Although reimbursement rates are one factor that influences whether a provider chooses to participate in Medicaid, *see* Dkt. 14.1 at 17–18, the fact that beneficiaries could choose to change providers to receive care and services at an FQHC because Medicaid will pay for those services without limitation will likely dissuade non-FQHC providers from joining or continuing to participate in Arizona's Medicaid program. *See* Dkt. 11.1, Ex. 3, ¶ 8. This concern is not "conjecture" or "counterfactual"; it is the logical consequence of permitting some market participants (FQHCs) to operate without limitation while others (non-FQHC providers) must work within longstanding constraints.

## IV.    A Security Is Not Required or Necessary.

Federal Rule of Appellate Procedure 8 does not require the imposition of security as a "condition" of entering a stay pending appeal; it simply provides that the Court "may condition relief" on the filing of a bond or other security. Fed. R. App. P. 8(a)(2)(E). A security is not necessary in this case. There is no risk that the State of Arizona will become insolvent and be unable to provide a full remedy at the end of the litigation. There is also no suggestion that Arizona will refuse to comply with the prospective nature of the injunction should the district court's order be affirmed on appeal. *See* Dkt. 11.1, Ex. 1 at 15. The fact that Arizona is a solvent

entity does not "swallow the rule" requiring a security or bond. *See* Dkt. 14.1 at 6. Unlike a case where a movant may not have the funds to effectuate a judgment if a stay is entered and the order stayed is upheld, here, there is no question that Arizona will be able to make Plaintiffs whole if the appeal ultimately results in the affirmance of the district court's order and injunction. Plaintiffs' "interest" in "prospective compliance" will therefore be fully satisfied, even if it may be delayed for a few months while the appeal is pending. *See* Dkt. 14.1 at 6; Dkt. 11.1, Ex. 1 at 15.

Plaintiffs have identified no evidence of damages they will sustain if a stay is entered, particularly given that the state plan amendment, if approved, would require AHCCCS to apply the same limitations that the injunction prohibits with an effective date of January 1, 2026. *See N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986) ("[I]f the district judge is satisfied that the expenditure is unnecessary to protect the appellee, [the court] does not have to insist that it be spent."). In other words, if the state plan amendment is approved, Plaintiffs will not be entitled to any additional reimbursement during the duration of the appeal regardless of the outcome of the litigation.

## CONCLUSION

For the foregoing reasons, Defendants ask the Court to stay the district court's March 12 Order and judgment pending resolution of this appeal.

10

Respectfully submitted,

Dated: July 20, 2026 /s/ Caroline M. Brown

Caroline M. Brown
Kendra Doty
Brown & Peisch PLLC
1220 19th Street NW, Suite 210
Washington, D.C. 20036
(202)499-4258
cbrown@brownandpeisch.com
kdoty@brownandpeisch.com

*Counsel for Defendants-Appellants*

11

## CERTIFICATE OF COMPLIANCE

The foregoing complies with the type-volume limitations set forth in Federal Rules of Appellate Procedure 27(d)(2)(A) and 32(a)(5)–(6) and Circuit Rule 27-1(1)(d). It is set in 14-point Times New Roman font, which is proportionally spaced. The foregoing contains 2,586 words, as calculated by Microsoft Word's word count, excluding the sections identified in Federal Rule of Appellate Procedure 32(f).

Dated: July 20, 2026

/s/ Caroline M. Brown
Caroline M. Brown

12

## CERTIFICATE OF SERVICE

I, Caroline M. Brown, hereby certify that a copy of the foregoing was sent by ECF to all counsel of record.

Dated: July 20, 2026

/s/ Caroline M. Brown
Caroline M. Brown